BURWOOD PRODUCTS COMPANY, Plaintiff,

v.

MARSEL MIRROR AND GLASS PRODUCTS, INC. and Marvin Leopold, Defendants.

No. 78 C 4494.

United States District Court, N. D. Illinois, E. D.

April 16, 1979.

Esther O. Kegan, Michael G. Berkman, Jane Shay Lynch, Kegan, Kegan & Berkman, Chicago, Ill., for plaintiff.

Robert V. Jambor, Hugh M. Gilroy, Haight, Hofeldt, Davis & Jambor, Chicago, Ill., James E. Siegel, Lackenbach, Lilling & Siegel, Scarsdale, N. Y., for defendants.

## ORDER

BUA, District Judge.

This is an action for copyright infringement. Plaintiff, an Illinois corporation, is the owner of copyright No. Gp. 89622, for a

wicker mirror design. The complaint alleges that defendant Marsel Mirror and Glass Products, Inc. (Marsel) has infringed this copyright by producing, displaying and selling certain wicker mirrors. It is further alleged that defendant Leopold is Marsel's president, and plaintiff accordingly seeks to hold Leopold jointly liable. Jurisdiction lies under 28 U.S.C. § 1338(a).

Now before the court is Marsel's motion to dismiss for lack of personal jurisdiction and improper venue, Rule 12(b)(2) & (3), Fed.R.Civ.P., and the motion of defendant Leopold to dismiss for failure to state a claim, Rule 12(b)(6), Fed.R.Civ.P.

In its motion, Marsel contends that it did not have the requisite "minimum contacts" with Illinois needed to sustain jurisdiction over a nonresident corporation. Service of process was had on Marsel in New York, pursuant to the Illinois long-arm statute. Ill.Rev.Stat. ch. 110, § 17. From the complaint and various memoranda submitted by the parties, the following facts appear undisputed. At the July, 1978 National Housewares Exhibition held in Chicago, Marsel displayed its wicker mirror designs numbered 617 and 618. Although the displayed mirrors were only prototypes of later production models, orders for these production models were solicited at the Exhibition. All such orders, however, were taken subject to approval by Marsel's New York office. Subsequent to the Housewares Exhibition, Marsel produced the allegedly infringing mirrors in New York and, in October, 1978, began selling them. On February 2, 1979, plaintiff's national sales manager purchased one of each of Marsel's products, the accused mirrors, at a K-Mart store in Des Plaines, Illinois. At all times herein relevant, Marsel had no telephone, mailing address or bank account in Illinois. Further, except for the booths it rented at the Housewares Exhibition, the defendant had no office, warehouse or other facility in this state. Contempo Merchandising Corporation, an independent contractor, represents Marsel in Illinois. Contempo's primary function is to solicit orders for Marsel, but it has no power to bind the defendant and has received no commission payments for its solicitation efforts.

As was noted previously, service of process was had on Marsel outside of Illinois pursuant to the Illinois long-arm statute.[1] Ill.Rev.Stat. ch. 110, § 17. The legislative intent of the long-arm statute is to exert jurisdiction over nonresident defendants to the fullest extent permissible under the due process clause. *Consolidated Laboratories, Inc. v. Shandon Scientific Co., Ltd.,* 384 F.2d 797, 801 (7th Cir. 1967); *Koplin v. Thomas, Haab & Botts,* 73 Ill.App.2d 242, 219 N.E.2d 646 (1966); *see Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673 (1957). Before jurisdiction can be asserted over a nonresident, however, the "minimum contacts" test of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), must be satisfied. The defendant's acts within the forum must be such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Id.* at 316, 66 S.Ct. at 158. Moreover, for personal jurisdiction to lie, the defendant must in some purposeful way invoke the benefits and protections of the forum state's laws. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington, supra.*

The burden of establishing amenability to process rests with the party asserting the existence of jurisdiction. *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1971); *Canvas Fabricators v. W. E. Hooper & Sons,* 199 F.2d 485 (7th Cir. 1952); *Rohlfing v. Cats Paw Rubber Co.,* 99 F.Supp. 886 (N.D.Ill.1957). Accordingly, Burwood must establish, primarily through

---

1. The Illinois long-arm statute provides in relevant part:

   (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
   (a) The transaction of any business within this State;
   (b) The commission of a tortious act within this State . . . ."
   Ill.Rev.Stat. ch. 110 § 17(1)(a), (b).

a prima facie showing in its complaint, that it would be proper to assert in personam jurisdiction over the defendants under the instant circumstances.[2]

In its complaint, plaintiff contends that Marsel, by dealing with the accused mirrors, has violated the Copyright Act of 1976 (the Act). 17 U.S.C. § 101, *et seq.* Under the Act, holders of copyrighted material are given five fundamental guarantees.[3] One such guarantee is the exclusive right to display the copyrighted work publicly. 17 U.S.C. § 106(5). Marsel, by displaying prototypes of the allegedly infringing mirrors at the Housewares Exhibition, has—plaintiff argues—violated this right.[4]

■ Copyright infringement is properly classified as a tort. *Feist v. Young,* 138 F.2d 972 (7th Cir. 1943); *Screen Gems-Co-lumbia Music, Inc. v. Mark-Fi Records, Inc.,* 256 F.Supp. 399 (S.D.N.Y.1966). To state an actionable claim based on the tort of displaying a graphic or sculptural work, sufficient facts must be alleged to indicate that a copy of the work was displayed without authorization in a "public" fashion. Burwood, by alleging that Marsel displayed the allegedly infringing mirrors at the Housewares Exhibition, has adequately stated that such a tort occurred.[5] Moreover, because this tort is alleged to have occurred in Illinois, Marsel may have committed a tortious act in this state, as contemplated by § 17(1)(b) of the long-arm statute.[6]

■ In addition to the exclusive right of public display, copyright holders enjoy the exclusive right to distribute copies of their

---

**2.** Marsel also has moved to dismiss for improper venue. Venue for copyright actions exists pursuant to 28 U.S.C. § 1400(a), which states:

(a) Civil actions, suits or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found.

It is well settled that when determining whether a nonresident corporation "may be found" within the district, the "minimum contacts" standard is to be applied. *Mode Art Jewelers Co. v. Expansion Jewelry Ltd.,* 409 F.Supp. 921 (S.D.N.Y.1976); *Kogan v. Longstreet,* 374 F.Supp. 47 (N.D.Ill.1974). The dispositive question with regard to both venue and jurisdiction issues, therefore, is the same. *Houghton Mifflin Co. v. National Computer Services, Inc.,* 378 F.Supp. 592 (S.D.N.Y.1974). Accordingly, this court will consider the venue and jurisdictional questions presented in Marsel's motion together in the context of the discussion of the personal jurisdiction issue.

**3.** 17 U.S.C. § 106 provides:

Exclusive rights in copyrighted works

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

**4.** A review of American copyright law indicates that the exclusive right of display did not exist prior to the Copyright Act of 1976. 17 U.S.C. § 101, et seq. H.R.Rep. 1476, 94th Cong., 2d Sess. 63 (1976), U.S.Code Cong. & Admin.News 1976, p. 5659. The instant case, therefore, appears to be one of first impression with respect to this issue.

**5.** "Display" is defined as "to show a copy" of the work. 17 U.S.C. § 101. Accordingly, by exhibiting the accused mirrors at the Housewares Exhibition, Marsel clearly displayed them. The fact that the accused mirrors were prototypes is no defense for Marsel, because "copy" refers to any reproduction of the original work. 17 U.S.C. § 101; *see also* H.R.Rep. 1476, 94th Cong., 2d Sess. 64 (1976).

Marsel's display of the accused mirrors also was done "publicly". "Publicly" is defined as

. . . (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered.

17 U.S.C. § 101. Showing the accused mirrors at the Housewares Exhibition, therefore, clearly constituted a "public" display. *See Crossbow, Inc. v. Glovemakers Inc.,* 265 F.Supp. 202 (N.D.Ill.1967).

**6.** *See* note 1 *supra.*

work to the public by sale or transfer. 17 U.S.C. § 106(3). Marsel's alleged act of promoting the accused mirrors and its subsequent sale of them, which apparently resulted in a delivery of the mirrors to an Illinois retail outlet, also may constitute a violation of Burwood's exclusive rights under the Act. The defendant, therefore, may have committed a second tort in Illinois.

Under the contemplation test developed in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), Marsel should have reasonably foreseen that its sale of the accused mirrors ultimately would result in their being distributed and/or resold in Illinois. Marsel actively engaged in the promotion of the mirrors at the Housewares Exhibition in Chicago, knowing full well that many Chicago merchants were present. The defendant, moreover, hired a Chicago-based contractor, Contempo, to be its Illinois merchandising representative. It is quite reasonable to assume, therefore, that Marsel contemplated the accused mirrors might be distributed in Illinois.[7]

In view of the aforementioned facts, this court concludes that Marsel's contacts with Illinois were sufficient to insure that maintenance of this lawsuit would not "offend traditional notions of fair play and substantial justice." Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction and improper venue is denied.

With respect to defendant Leopold, plaintiff has alleged that he has a mailing address in New York which corresponds to that of Marsel and that he is the president of Marsel. The complaint contains nothing more. To adequately state a claim against this defendant, however, far more needs to be presented.

To sustain its burden as to defendant Leopold, Burwood must have al-

leged facts to indicate that, in his capacity as Marsel's president, the defendant personally participated in the actual infringement or derived financial benefit specifically from it; or that he wilfully used the corporation to carry out a deliberate and knowing infringement; or that he was the dominant influence in the corporation and personally determined the corporate policies which resulted in the infringement; or some combination of the above. *Famous Music Corp. v. Bay State Harness Racing & Breeding Assoc., Inc.*, 423 F.Supp. 341 (D.Mass.1976). This it clearly has not done. This court, therefore, has no alternative but to grant defendant Leopold's motion to dismiss. Accordingly, it is so ordered.

7. The fact that Burwood failed to allege a direct sale by Marsel to an Illinois merchant is not fatal. As was stated in *Gray*:
Where the alleged liability arises . . . from the manufacture of products presumably sold in contemplation of use here, it

should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this state.
22 Ill.2d at 442, 176 N.E.2d at 766.