**Wesley STREETER**

v.

**Charles T. ROLFE.**

**Civ. A. No. 79–0684.**

United States District Court,
W. D. Louisiana,
Monroe Division.

June 2, 1980.

C. Emmett Pugh, C. Emmett Pugh & Associates, New Orleans, La., for plaintiff.

Michael O. Sutton, Arnold, White & Durkee, Houston, Tex., for defendant.

## MEMORANDUM RULING

STAGG, District Judge.

This copyright infringement action arises from the personal acrimony between two former business associates. In early February of 1979, defendant Charles T. Rolfe, an insurance agent residing in Bastrop, Louisiana, contacted plaintiff Wesley Streeter, a taxidermist also living in Bastrop. Defendant wanted plaintiff to design a lightweight wild turkey decoy and develop a mold for the commercial production of these decoys.

Plaintiff and defendant conferred on certain features to be incorporated in the turkey decoy, such as a detachable head, legs, and an innerbody cavity. Plaintiff eventually designed a suitable turkey model and constructed a turkey decoy mold. Around March 4, 1979, the relationship fell apart. Defendant stated that he had the ideas and considered plaintiff merely the craftsman. Defendant was going to pay plaintiff for his skill and services, and considered the decoy mold and design to be his personal property. Plaintiff, on the other hand, was equally convinced that the decoys and mold were his property and that he and defendant were in a business venture to market the items.

On April 5, 1979, plaintiff obtained a copyright registration. The validity of this copyright is stipulated by the parties. Prior to April 5, defendant completed his own turkey decoy mold (Mold No. 2). On May 18, 1979, the complaint was filed in this action, seeking damages for copyright infringement. On August 17, 1979, the parties filed a pretrial stipulation containing the following stipulation of undisputed facts:

1. Plaintiff Wesley R. Streeter is a Louisiana resident domiciled in Bastrop, Louisiana, having a mailing address at Route 5, Box 455, Bastrop, Louisiana 71220.

2. Defendant Charles T. Rolfe is a Louisiana resident domiciled in Bastrop, Louisiana, having a mailing address at 214 East Madison Street, Bastrop, Louisiana 71220.

3. Plaintiff and defendant are the real parties in interest and the necessary parties in this action. This action initially revolved around the ownership, validity and infringement of a federally registered copyright, registration No. VAu 5–871, secured by plaintiff. That copyright registration

relates to a first set of molds for a turkey decoy body and a turkey decoy head and molded plastic bodies and heads made from those molds. This case further revolves around a second set of molds for a turkey decoy body and a turkey decoy head made by the defendant and plastic molded turkey decoy bodies and heads made from that set of molds. On August 13, 1979, defendant stipulated to the ownership and validity of copyright registration No. VAu 5–871 in plaintiff's favor, in order to reduce the issues in the case.

4. This court has jurisdiction over the parties and subject matter of this action. Venue is proper in this district.

5. Plaintiff is and has been engaged in the business of, among other things, taxidermy, owning his own taxidermy business in Bastrop, Louisiana, and is an experienced taxidermist.

6. Defendant is a businessman, whose primary business activity is (and has been for a number of years) the insurance business. Defendant was not experienced or knowledgeable in the taxidermy field or in making molds or molded products prior to his investigations to develop and build the second set of molds and the turkey bodies and heads to be made from that second set of molds.

7. On or before February 1, 1979, an article in the February 1979 issue of *Outdoor Life* magazine came to the attention of the defendant.

8. On or about February 1, 1979, defendant approached plaintiff, mentioned the *Outdoor Life* article, and discussed with plaintiff the commercial desirability of producing and selling turkey decoys.

9. Defendant asked plaintiff about the possibility of designing a mold for a turkey decoy. Plaintiff replied that he believed that he, plaintiff, could make such a mold.

10. At some time the parties orally discussed and considered plaintiff's designing and producing the decoy bodies and mold, and defendant's painting the plain decoy bodies and arranging for marketing of the finished decoys. Defendant now stipulates

that no complete understanding was ever reached between the parties, and that no written agreement or other documents were signed or executed. Defendant contends that it was his original intent and desire to have the plaintiff make the molds for defendant's use in manufacturing turkey decoys. Plaintiff denies this contention.

11. Sometime after the meeting on February 1, 1979, plaintiff carved an experimental miniature decoy body out of wood and then later formed a model for use in making the body mold of the first set of molds.

12. On or about February 24, 1979, the first prototype of decoy bodies was poured. Present were plaintiff, plaintiff's wife, plaintiff's son, Wesley Streeter Jr., Robert Gladney and defendant. At that time, plaintiff and defendant discussed the chemicals involved in making the turkey decoy bodies.

13. On or about February 24, 1979, and thereafter on a separate occasion, plaintiff allowed defendant to take a total of at least ten (plaintiff contends there were 19, defendant contends there were only ten) of the prototype turkey decoy bodies home with him. Each of these decoy bodies had plaintiff's name and phone number molded into the underside thereof. None of the bodies included a legend of either the symbol for copyright, a designation "Copr.", the word "Copyright" or the year date. Plaintiff had full knowledge that the defendant took physical possession of those turkey decoy bodies. Plaintiff did not object to the defendant taking physical possession of those turkey decoy bodies. Plaintiff contends that his understanding was that the defendant was taking the turkey decoy bodies only for the purposes of experimenting with painting schemes and was not to make any other use of them without plaintiff's permission.

14. On or about February 24, 1979, defendant contends he suggested to the plaintiff that the cavity in the body of the turkey decoy be enlarged.

15. After pouring the prototype bodies on or about February 24, 1979, plaintiff began work on designing and producing a turkey head mold. At one stage of this work, he made a mold for what plaintiff contends to be a temporary decoy head, by using a real turkey head that was supplied to the plaintiff by the defendant.

16. In March of 1979, the defendant contends that he indicated to plaintiff that the defendant desired to take photographs of one of the turkey decoy bodies with a head on the body that had been made from the mold constructed by using the real turkey head, for the purpose of getting started on creating advertisements. Defendant took several photographs of such a decoy body with such a head attached. Plaintiff was present at the time that the photographs were made by the defendant, and had full knowledge that the defendant was making those photographs. The defendant contends that plaintiff was aware of the defendant's intentions to use those photographs in advertisement. The plaintiff contends that no advertisement was to be allowed without his approval.

17. On March 4, 1979, plaintiff personally handed to defendant a two-page document.[1]

18. On or about March 6, 1979, defendant, through his attorney Merwin M. Brandon, initiated a patent search in preparation for making a patent application on the turkey decoys. Defendant subsequently decided not to file a patent application on the decoy. Defendant contends that the reason for not filing the patent application was because the prior patents located in that patent search show that decoys in general are not novel and that the concept of a body cavity for storing the head and legs is not novel. Defendant also filed an application for a copyright with the U.S. Copyright Office.

19. Prior to April 5, 1979—the effective date of registration VAu 5–871—defendant had printed and distributed a commercial flyer including a photograph of a turkey decoy body made from the first mold, and with a decoy head on that body.

20. Also prior to April 5, 1979—the effective date of registration VAu 5–871—defendant placed an ad in *Turkey Call* magazine. That ad includes a photograph of a turkey decoy body made from the first mold, with a decoy head that plaintiff contends to have been a temporary head.

21. Defendant subsequently made the second set of molds for a turkey decoy body and head. Defendant admits that during the time period that he made the second set of molds that he had in his possession at least some of the turkey decoy bodies that he had taken possession of as previously described. Defendant contends that he independently developed the design for the second set of molds and for the turkey decoy bodies and heads to be made from those molds.

22. As of June 5, 1979 (the date of defendant's deposition), the defendant had produced approximately 18 turkey decoys from the second set of molds. Defendant contends that all of these turkey decoys were made before May 7, 1979—the date that he received the first actual notice that plaintiff had secured registration VAu 5–871.

23. Defendant has sold one turkey decoy made from the second mold. Defendant contends that this sale was made prior to May 7, 1979, the date that he obtained the first actual notice that plaintiff had secured registration VAu 5–871.

24. On April 5, 1979, plaintiff applied for a copyright on his set of molds and turkey decoys produced from those sets of molds. Registration on that copyright was granted by the U. S. Copyright Office on April 11, 1979, and the effective date thereof is April 5, 1979. The registration on that copyright bears number VAu 5–871. That registration is for an unpublished work.

25. On May 4, 1979, plaintiff, through his attorney C. Emmett Pugh, by registered mail, advised the defendant of plaintiff's copyright and of defendant's alleged in-

---

1. Document not reproduced for publication.

fringement thereof. That letter was received by the defendant on May 7, 1979. That letter was the first actual notice that was given to the defendant that the plaintiff had obtained registration VAu 5–871.

26. Plaintiff filed the present action on May 18, 1979. Prior to filing this action, neither the plaintiff, plaintiff's attorney, nor anyone acting in concert with the plaintiff had seen a turkey decoy made by the defendant from the second set of molds. Plaintiff contends that he brought this action based upon defendant's failure to return or account for the turkey bodies in defendant's possession made from the first mold and upon statements made by defendant and/or defendant's attorney prior to that date.

This case is currently before the court on the parties' motions for summary judgment. This court finds that defendant's turkey decoy made from Mold No. 2 is not an infringement on plaintiff's copyright. The two turkey decoys furnished this court are not substantially similar, nor does one appear to be a copy of the other. Further, the court finds that plaintiff is not entitled to actual or statutory damages for any act that may be considered an infringement of plaintiff's copyright occurring prior to or after April 5, 1979, which is the effective date of plaintiff's copyright registration. Finally, considering the facts giving rise to this lawsuit and the intentions of the plaintiff as evidenced in his deposition, the court finds that an award of attorney's fees against the plaintiff would be improper.

## DEFENDANT'S TURKEY DECOY IS NOT AN INFRINGEMENT ON PLAINTIFF'S COPYRIGHT

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1338. Venue is proper as the defendant resides within the Western District of Louisiana. *See* 28 U.S.C. § 1400(a).

"To promote the Progress of Science and useful Arts, by securing for limited Time to Authors and Inventors the exclusive Right to their respective Writings and Discoveries"[2], the United States Constitution empowers Congress to pass copyright laws. The federal copyright laws are found in Title 17 of the United States Code. The Act was recently amended with changes effective January 1, 1978. The protection Congress has given under the copyright laws is limited: "Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself." *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954) (footnote omitted.)

What the copyright statute forbids is copying another's work. Absent copying, there can be no infringement of a valid copyright. *Mazer* at 217, 74 S.Ct. at 470. The statute does not prohibit an individual from copying the original or a likeness in nature. As Justice Holmes stated in another context:

> Others are free to copy the original. They are not free to copy the copy . . The copy is the personal reaction of an individual upon nature. Personality always contains something unique. It expresses its singularity, even in handwriting, and a very modest grade of art has in it something irreducible, which is one man's alone. That something he may copyright . . ..

*Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 249–50, 23 S.Ct. 298, 299–300, 47 L.Ed. 460 (1903).

A copyright bars the use of a particularized expression of the idea, it does not bar the use of the idea itself. Consequently, others can utilize the idea as long as they do not plagiarize its expression. *Hebert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 (9th Cir. 1971). Oftentimes, the difference between an idea and its expression can be difficult to discern. In this case, the court finds no copying of plaintiff's expression. The *idea* of a turkey decoy is not new. Further, both decoys must resemble a turkey, or they would be

**2.** U.S.Const. art. I § 8 cl. 8.

useless. The margin for difference is admittedly small; however, the differences in the neck, tail and body fullness between Turkey Decoy No. 1 and Turkey Decoy No. 2 are readily recognizable upon a view of the exhibits. The two decoys are not substantially similar, nor does one appear to be an exact copy of the other.

The court is faced with two models attempting to represent a likeness of a creature found in nature. Plaintiff cannot contend that he originated the idea of a turkey, nor can he contend that his was the first turkey decoy. Other courts, when faced with a dispute involving replications of items in nature, have refused to find a copyright infringement, absent a finding that defendant made an exact copy of plaintiff's likeness. *See e. g., Hebert Rosenthal Jewelry Corp. v. Kalpakian, supra.*

The court cannot ignore the fact that defendant had access to plaintiff's work. Defendant did not arrive at his decoy completely independent of plaintiff's work; but as Judge Hand stated in *Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d 49, 54 (2d Cir. 1936):

> [D]efendants were entitled to use, not only all that had gone before, but even the plaintiffs' contribution itself, if they drew from it only the more general patterns; that is, if they kept clear of its "expression".

Plaintiff's copyright does not give him the exclusive right to manufacture turkey decoys. His copyright merely protects his expression of the idea. The only distinguishing feature of plaintiff's decoy incorporated in defendant's decoy is the innerbody cavity and the detachable head and legs. These features, however, were in the public domain long before plaintiff received his copyright. Further, as defendant argues, these utilitarian features are not subject to copyright protection. Finding the defendant's turkey decoy is not a copy of plaintiff's model and that the two are not substantially similar, this court rules that defendant's decoy is not an infringement upon plaintiff's copyright.

## DEFENDANT'S ACTIVITIES INVOLVING PLAINTIFF'S COPYRIGHTED DECOY DO NOT TRIGGER AN AWARD OF ACTUAL DAMAGES OR STATUTORY DAMAGES

■ 17 U.S.C. § 504 provides the remedies for infringement of a copyright. The statute allows for statutory damages between $250 and $10,000 for any proven infringement. In the alternative, the statute allows copyright owners to collect actual damages plus any additional profits made by the infringer. This court has previously found that defendant's decoy is not an infringement of plaintiff's copyright. Defendant's other activities, such as photographing, advertising, and displaying plaintiff's decoys could be construed as acts of infringement. Consequently this court must address the propriety of awarding damages to plaintiff under Section 504.

Ordinarily, this court would need to decide whether defendant's activities were infringements of plaintiff's copyright before reaching the damages question. However, Section 412 of the copyright act provides that no award of statutory damages or of attorney's fees may be made for any infringement that occurred prior to the effective date of the registration. In this case, the effective date of the copyright is April 5, 1979.

■ It appears that defendant's only activity with plaintiff's decoy after this date, except for the manufacture of defendant's turkey mold, was defendant's use of plaintiff's decoy in a hunt. The court finds that this activity was not a "public display" and not an infringement on plaintiff's copyright. Defendant did not infringe on plaintiff's copyright after April 5, 1979, and statutory damages are precluded by Section 412(1).

■ Plaintiff argues that Section 412(2) allows a grace period prior to the effective date of the copyright during which time act of infringement would trigger an award of statutory damages. However, this section applies only to published works and plaintiff stipulated that his turkey decoy is not a published work.

■ Section 412 is not a prohibition against the award of actual damages. Actual damages are proper for acts of infringement occurring before or after the effective date of the registration. However, these damages must be proven. In this case, neither the defendant nor the plaintiff has sold a decoy poured from Mold No. 1. No profits have been realized by either party. Plaintiff argues that his health and business have been damaged by the imbroglio between plaintiff and defendant. Plaintiff also argues that he has not sold a decoy from Mold No. 1 *because of defendant's actions*. Pretermitting any discussion of causation, these elements to not appear to be recoverable items in a copyright infringement suit. Plaintiff's loss of health and business are not damages from an infringement of his copyright. Further, his decision not to sell a decoy may have been caused by defendant's actions in general, but not by any act of infringement.

Plaintiff's argument that material issues of fact preclude an award of summary judgment on this issue is not persuasive. The plaintiff has not articulated any damages which the law considers actual damages flowing from a copyright infringement. Accordingly, an award of damages against the defendant, statutory or actual, would be improper.

## AN AWARD OF ATTORNEY'S FEES AGAINST PLAINTIFF UNDER SECTION 505 WOULD BE IMPROPER

■ Defendant requests that attorney's fees be awarded against the plaintiff. Section 505 of Title 17 provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

As the statute indicates, awarding of attorney's fees to the prevailing party is totally within the discretion of the trial court.

After reading all the briefs, pleadings, depositions and affidavits filed in this matter, it is the opinion of this court that plaintiff's suit was brought in good faith and that an award of attorney's fees would be improper. Defendant and plaintiff collaborated on the project resulting in Turkey Mold No. 1. Plaintiff's letter of March 4,[3] demonstrates plaintiff's concern about the future of his turkey mold. After the relationship deteriorated, the parties parted on bad terms. Defendant did advertise and display plaintiff's turkey after this breakup. Defendant retained several of plaintiff's decoys until forced to surrender them to the United States Marshal. When defendant started manufacturing his own turkey decoys, plaintiff was totally reasonable in assuming that his craftsmanship was being plagiarized. Only after this lawsuit and accompanying discovery, did the true facts come to light.

Finding that an award of attorney's fees in this case would be improper, defendant's motion is denied.

## CONCLUSION

Rule 56(c) of the Federal Rules of Civil Procedure allows the court to enter a judgment if there is no genuine issue of material fact, and a party is entitled to prevail as a matter of law. In this action, all material facts are stipulated by the parties. Defendant is entitled to judgment on plaintiff's infringement claim, though an award of attorney's fees against plaintiff would be improper. This court finds the case an appropriate one for disposition by summary judgment and enters judgment accordingly.

**3.** See footnote 1.