**Brenda P. THOMAS, Plaintiff,**

**v.**

**PANSY ELLEN PRODUCTS, INC., Defendant.**

**No. C–C–87–79–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 14, 1987.

**238**

W. Thad Adams, III, Charlotte, N.C., for plaintiff.

William H. Needle, Lawrence K. Nodine, Needle & Rosenberg, P.C., Atlanta, Ga., Michael D. McCoy, John H. Thomas, Bell, Seltzer, Park & Gibson, Charlotte, N.C., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant's first Motion for Partial Summary Judgment, Plaintiff's Motion for partial summary judgment, and Plaintiff's Motions to compel production of documents, for an *in camera* inspection, and to reschedule discovery. The Court heard oral argument of both parties on their respective summary judgment motions on August 31, 1987. Plaintiff was represented by W. Thad Adams, III of Charlotte; Defendant, by Lawrence K. Nodine of Atlanta and Michael D. McCoy of Charlotte.

Plaintiff sued Defendant for copyright infringement, claiming that Defendant infringed her copyright on several designs, mostly cute animals, for use on nursery room accessories. Defendant placed these designs on nursery room storage jars, which it marketed to the public.

The Parties' respective motions for partial summary judgment center on the availability of statutory damages and attorney's fees under 17 U.S.C. §§ 504 and 505 (1982). Defendant urges that Plaintiff is barred from recovering §§ 504 and 505 damages because her registration of the copyright was untimely. *See* 17 U.S.C. § 412 (1982). Defendant, though not admitting Plaintiff's ownership of the copyright, argues that it commenced "infringement" more than three months before Plaintiff registered her copyright in the designs. Moreover, Defendant contends, Plaintiff is not entitled to § 412's three-month grace period, so that, even if the alleged infringement commenced less than three months prior to registration, §§ 504 and 505 damages are unavailable. *Compare* 17 U.S.C. § 412(1) *with* 17 U.S.C. § 412(2).

Three copyrighted designs are involved here. Two designs, "My Bear" and "Pastel Playmates," will be considered together, for Defendant committed identical acts at the same times with respect to these two designs. The "Country Traditions" design will be considered separately. Plaintiff registered all three of the designs on April 21 or 22, 1986.

The pertinent statutes are part of the Copyright Act of 1976, which completely revamped the nation's copyright laws. For purposes of these motions, the exclusive rights in question are set out in 17 U.S.C. § 106(1) and (5).

> Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> .    .    .    .    .

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, ... to display the copyrighted work publicly.

Under 17 U.S.C. § 504, the owner of a copyright is entitled to choose between recovering actual damages from an infringer, or recovering statutory damages of between $250 and $50,000. Section 505 allows a copyright owner to recover attorney's fees and costs. The damages provided for in §§ 504 and 505 are limited by 17 U.S.C. § 412 (1982), which reads:

In any action under this title, other than an action instituted under section 411(b), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

Defendant moved for partial summary judgment, claiming that the undisputed facts establish that Plaintiff is not entitled to §§ 504 and 505 damages by virtue of § 412. Plaintiff cross-moved for summary judgment on the same issue.

The parties agree that the "My Bear" and "Pastel Playmates" designs were displayed at a Juvenile Manufacturers Products Association ("JMPA") trade show in Dallas, Texas in October, 1985, and that the products bearing the "My Bear" and "Pastel Playmates" designs were received in the United States from an overseas manufacturer at least as early as January 1986. Similarly, the parties do not dispute that the Vice President of Marketing for Defendant Pansy Ellen Products requested, by letter dated December 20, 1985, that an overseas manufacturer produce "a few samples" of products bearing the "Country Traditions" design. The parties agree that products bearing the "Country Traditions"

designs did not arrive in the United States until after April 21 or 22, 1986.

## I. CROSS–MOTIONS FOR SUMMARY JUDGMENT

### A. "My Bear" and "Pastel Playmates" Designs.

The question which must be answered to determine Plaintiff's eligibility for §§ 504 and 505 damages is "when did infringement *commence?*" Defendant first argues that Plaintiff is bound by her statement in the Complaint that, "[c]ommencing in 1985, the exact date being presently unknown to Plaintiff, Defendants began marketing a 'nursery jar organizer set'" bearing "artwork which is the subject of ... [Plaintiff's] copyright applications." Amended Complaint, ¶¶ 9 and 10. The Court is not inclined to place such a restrictive construction on the allegations of the Complaint. Plaintiff will be allowed to argue that infringement commenced at a time other than that alleged as the commencement of "marketing" of infringing copies.

More damaging to Plaintiff's case is the admitted display of jars bearing the "My Bear" and "Pastel Playmates" designs at the 1985 Dallas trade show. Although in her briefs Plaintiff claims that the only infringements at issue in this case are "the reproducing of the copyrighted work in copies, the preparation of derivative works ... and the distribution of copies of the copyrighted work to the public by sale or other transfer of ownership," Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment and in Support of Plaintiff's Motion for Summary Judgment at 2, Plaintiff also seeks recovery for Defendant's acts of "displaying the copyrighted work publicly," Amended Complaint ¶ 15. If the 1985 trade show constituted a public display of the copyrighted designs in violation of Plaintiff's right under 17 U.S.C. § 106(5), then Defendant's infringement commenced in October, 1985, and Plaintiff is precluded from recovering statutory damages and attorney's fees regardless of whether her work

is published or unpublished as contemplated by § 412.

The Copyright Act of 1976 (the "Act") represents the first time that Congress recognized an exclusive right to display a copyrighted work as a component of copyright. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 63, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5676; 2 M.B. Nimmer, *Nimmer on Copyright* § 8.20[A] (1987). The Act defines "display" as a showing of a copy of a work. 17 U.S.C. § 101 (1982). A "public display" is a display "at a place open to the public or ... where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered." *Id.* The parties do not appear to contest the characterization of the trade show display as a "display;" rather, the issue is whether it was a *public* display.

Plaintiff argues that the showing at the Dallas Trade show was not public because attendance at the trade show was restricted to "members of the Juvenile Products Manufacturers Association and only qualified buyers ... are permitted to attend." Affidavit of Brenda P. Thomas ¶ 3, Exhibit C to Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment. Plaintiff cites case law construing the 1909 Copyright Act's judicially-created concepts of "publication" and "limited publication." Plaintiff attempts to equate "public display" under the 1976 Act with "publication" under the 1909 Act. Plaintiff does this without any attempt to acknowledge that the copyright laws were overhauled in 1976, or that the right of public display is a newly sanctioned right. *Cf. Technicon Med. Info. Systems Corp. v. Green Bay Packaging, Inc.,* 687 F.2d 1032, 1034 n. 4 (7th Cir.1982) (noting that 1909 Act remains relevant for " 'undertakings

commenced before January 1, 1978' "), *cert. denied,* 459 U.S. 1106, 103 S.Ct. 732, 74 L.Ed.2d 955 (1983).

■ Applying a literal construction to Congress' definition of "public display" leads to the conclusion that the display at the Dallas trade show was public. Though limited to JMPA members, the audience consisted of "a substantial number of persons outside of a normal circle of a family and its social acquaintances." 17 U.S.C. § 101. In *Ackee Music, Inc. v. Williams,* 650 F.Supp. 653 (D.Kan.1986), the court held that performance of copyrighted songs at defendant's private club constituted a public performance, notwithstanding that the club was classified as "private" under Kansas law. 650 F.Supp. at 656. By contrast, the use of a copyrighted turkey decoy in a hunt was held not to be a public display. *Streeter v. Rolfe,* 491 F.Supp. 416, 421 (W.D.La.1980).

■ Clearly, the Dallas trade show is closer to the private club involved in *Ackee* than to the hunting party in *Streeter.* The public display of the "My Bear" and "Pastel Playmates" designs at the October, 1985 trade show constituted the commencement of infringement under 17 U.S.C. § 412. Since October, 1985 was more than three months prior to Plaintiff's registration of the copyright on August 21 and 22, 1986, it is unnecessary for the Court to decide whether the designs were published or unpublished. Even if the designs were published, thereby entitling Plaintiff to § 412(2)'s three-month grace period, registration was untimely and Plaintiff cannot recover statutory damages under § 504 or costs and attorney's fees under § 505 for infringement of the "My Bear" and "Pastel Playmates" designs.[1] Accordingly, De-

---

1. Defendant cites *Burwood Products Co. v. Marsel Mirror and Glass Products, Inc.,* 468 F.Supp. 1215 (N.D.Ill.1979), as directly on point with the case at bar. In *Burwood Products* the Court held that the defendant infringed the plaintiff's copyright when it displayed prototypes of copyrighted mirrors at a trade show. The main concern in *Burwood,* however, appeared to be whether displaying *prototypes* of the copyrighted item, rather than the finished item itself, infringed the plaintiff's right of public display.

On the issue of the public nature of the display, the court merely quoted 17 U.S.C. § 101's definition and held that the trade show display was public. 468 F.Supp. at 1218 n. 5. The court's opinion does not indicate whether the trade show in *Burwood Products* was open to the public; therefore, the case is of limited value in answering the question before this Court; *viz:* whether a display at a members-only trade show

fendant's Motion for partial summary judgment on the § 412 issue will be granted as to the "My Bear" and "Pastel Playmates" designs; Plaintiff's corresponding motion will be denied.[2]

### B. "Country Traditions" Design

The only act respecting the "Country Traditions" design which Defendant committed prior to Plaintiff's registering her copyright was the act of authorizing or requesting the Taiwan manufacturer to produce "a few samples" of product bearing this design. If this act constituted infringement of Plaintiff's copyright, then Plaintiff is not entitled to recover the statutory damages and attorney's fees afforded by 17 U.S.C. §§ 504 and 505.

As with the right of public display discussed above, the Court deals here with a right newly recognized by Congress: the right "to authorize" infringing acts. *See* 17 U.S.C. § 106 (1982); H.R.Rep. 1476, 94th Cong., 2d Sess. 61, *reprinted in* 1976 U.S. Code Cong. & Admin.News 5659, 5674. The Copyright Act does not include a definition of "authorize;" however, the legislative history indicates that the inclusion of the right "to authorize" the exercise of the usual rights attendant upon copyright was intended to emphasize that "contributory infringers," as courts had coined the phrase under the 1909 Act, were liable for copyright infringement even though they did not directly commit a 1909 act infringement. H.R.Rep. 1476, 94th Cong., 2d Sess. 61, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5674.

The right "to authorize" reproduction, preparation of derivative works, distribution, and public performance and display of the copyrighted work has been construed in only one case, *Peter Starr Production Co. v. Twin Continental Films, Inc.,* 783 F.2d 1440 (9th Cir.1986). *Peter Starr* is very nearly on point here, for the court there examined the effect of an authorization occurring inside of the United States, authorizing acts to be committed outside of the United States. The plaintiff alleged that the defendant in *Peter Starr* had executed a contract with an overseas motion picture company for overseas exhibition of the plaintiff's copyrighted film. The defendant and the overseas company executed the contract in the United States. When the plaintiff sued for copyright infringement, the defendant moved to dismiss the complaint, claiming that the court lacked subject matter jurisdiction because the complaint alleged no infringing acts occurring within the United States. The court found that the plaintiff had alleged an act of infringement within the United States: the *authorization* of the overseas infringement. 783 F.2d at 1443.

■ Precisely the same situation is presented in the case at bar. The undisputed facts show that Defendant's agent authorized the Taiwan manufacturer to reproduce the copyrighted "Country Traditions" design by letter sent *from the United States.* The authorization thus occurred here, and constituted the commencement of infringement as contemplated in 17 U.S.C. § 412.

Plaintiff urges that it was not the authorization in *Peter Starr* that was important; rather, it was the *execution of the contract* authorizing the overseas distribution. But the *Peter Starr* court made clear that the only reason that the court focused upon the execution of the contract was because the plaintiff alleged that it was the execution of the contract which constituted the infringing authorization. *See* 783 F.2d at 1442 n. 2 (noting issue of fact whether "authorization" occurred during contract *negotiations* in France or during contract

---

constitutes a public display under 17 U.S.C. § 106(5).

**2.** Also of note concerning the "My Bear" and "Pastel Playmates" designs is the undisputed fact that nursery jar sets bearing the "My Bear" and "Pastel Playmates" designs were delivered to Defendant's warehouse in Atlanta, Georgia on January 16, 1986. Declaration of John F. Carey,

III, ¶ 2. Thus, even if this Court were not of the opinion that the trade show display constituted commencement of infringement, Plaintiff still would not be entitled to recover §§ 504 and 505 damages. Importing unauthorized copies into the United States undeniably "commenced" infringement. *See* 17 U.S.C. § 602(a) (1982).

*execution* in U.S.).[3] It is not necessary that a contract be executed in order for an infringing authorization to occur. It being undisputed that Defendant authorized reproduction of the "Country Traditions" design in December, 1985, and that the act of authorizing such reproduction occurred in the United States, Plaintiff is precluded from recovering §§ 504 and 505 statutory damages and attorney's fees for Defendant's infringement of the "Country Traditions" design.[4]

## II. MOTION TO COMPEL

Plaintiff seeks to compel Defendant to produce seven documents which Defendant claims are protected from discovery by the attorney-client privilege. *See* Fed.R.Civ.P. 26(b)(1) (scope of discovery includes "any matter, not privileged, . . ."). Defendant "inadvertently" produced three of the documents, referred to as documents numbers 1–3, in response to Plaintiff's request for production. When Defendant apprised Plaintiff of its claim that the three documents it produced were privileged, Plaintiff asked that Defendant provide a list of all requested documents, produced or not, as to which Defendant claimed a privilege.[5]

Plaintiff claims that the list produced by Defendant inadequately describes the documents.[6] Plaintiff also claims that, with respect to those documents which were produced, though inadvertently, the privilege

**3.** No such issue of fact precluding summary judgment (but unimportant to resolution of the motion to dismiss before the *Peter Starr* court) is present here. Defendant has produced an affidavit of its Vice President for Marketing that "[t]he reproduction and copying of the "Country Traditions" artwork began in December 1985 immediately upon completion of the original artwork." Declaration of Bill Martin ¶ 5. Defendant also has produced a letter requesting the Taiwanese manufacturer *to* "produce a few samples" of the "Country Traditions" nursery jar sets "and return them to us [Defendant] as soon as possible." Declaration of Bill Martin, Exhibit C. Plaintiff has put forth no evidence to contradict Mr. Martin's affidavit. The parties disagree only as to the legal significance of the letter.

**4.** The § 412 exclusion applies only to § 504 statutory *damages; actual damages, if any, are* available despite Plaintiff's untimely registration of her copyright.

**5.** The dispute over privileged documents arose at the deposition of one of Defendant's employees, Anne Murrell. Plaintiff's counsel sought to question Mrs. Murrell about three documents, at which time Defendant's counsel claimed that the documents had been produced by mistake and that they were privileged. Deposition of Anne Murrell 30. The parties agreed that Plaintiff's counsel could question Ms. Murrell concerning the documents, subject to Defendant's claim of privilege, and that Defendant would provide Plaintiff with a list of all "privileged" documents. The list provided by Defendant comprised seven documents: Nos. 1–3 had been produced and were those documents in question at Ms. Murrell's deposition, No. 4 also was produced by inadvertence, and Nos. 5–7 were never produced.

**6.** The list reads:

July 23, 1987

ATTORNEY–CLIENT PRIVILEGE DOCUMENTS

Brenda P. Thomas v. Pansy Ellen Products, Inc.

| NUMBER | DATE | FROM | TO | DOCUMENT | REGARDING |
|---|---|---|---|---|---|
| 1. | Undated | Anne Murrell | William H. Needle | Handwritten note | COUNTRY TRADITIONS |
| 2. | Undated | Anne Murrell | William H. Needle | Handwritten note | MY BEAR |
| 3. | 3/3/87 | Anne Murrell | John Carey/ William H. Needle | Handwritten note | Response to attorney's questions |
| 4. | Undated | Anne Murrell | William H. Needle | Handwritten note | PASTEL PLAYMATES |
| 5. | 2/27/87 | John Carey | William H. Needle | Handwritten note | Notes of discussion with attorney |
| 6. | 2/28/87 | John Carey | William H. Needle | Memo | Brenda P. Thomas v. Pansy Ellen Products, Inc. |
| 7. | 3/31/87 | Anne Murrell | William H. Needle | Memo | Brenda P. Thomas v. Pansy Ellen Products, Inc. |

has been waived. Plaintiff argues further that, since all of the documents are from Defendant's employees to Defendant's attorneys, no privilege attaches because no legal advice is contained therein. Plaintiff requests that the Court conduct an *in camera* review of the documents to determine whether each is privileged. The Court has done so, and finds that the claim of privilege is valid as to document No. 5, and either is invalid or has been waived with respect to the other documents.

■ At the outset, the Court notes that Plaintiff's argument that, because no legal advice was contained in the documents, they are not protected, is specious. It is *client* confidences, not attorney advice, that are protected by the privilege.

The Fourth Circuit adheres to the standard for attorney-client privilege enunciated in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950):

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982); quoting *United Shoe Machinery*, 89 F.Supp. at 358–59. Where a corporation asserts the privilege, the concept of "client" is more complicated because the corporation cannot act except through agents. *Upjohn Co. v. United States*, 449 U.S. 383, 389–90, 101 S.Ct. 677, 682–83, 66 L.Ed.2d 584 (1981). In *Upjohn Co.*, the Supreme Court, examining the scope of the privilege, took into account corporate counsel's need of obtaining information from varying levels of corporate agents. 449 U.S. at 391, 101 S.Ct. at 683. The Court rejected the more constricting "control group" test in favor of a flexible standard for determining when employee communications to corporate counsel are privileged. 449 U.S. at 392–94, 101 S.Ct. at 684–85.

■ Under *Upjohn Co.*, then, the fact that lower-echelon corporate agents made the communications at issue is unimportant. If "[t]he communications ... were made ... to counsel for [Pansy Ellen] acting as such, at the direction of corporate superiors in order to secure legal advice from counsel," 449 U.S. at 394, 101 S.Ct. at 685, then the communications are privileged.

■ With respect to documents Nos. 5–7, the claim of privilege is warranted. All three are communications intended either directly or ultimately for the corporation's counsel to enable counsel to defend the pending lawsuit. These documents fall squarely within the scope of the privilege as interpreted by the Supreme Court in *Upjohn Co.* Defendant is not required to produce documents Nos. 5–7.

■ Documents Nos. 1–4 were produced during discovery, though inadvertently according to Defendant. Voluntary production, even where inadvertent, effects a waiver of privilege. *Underwater Storage, Inc. v. United States Rubber Co.*, 314 F.Supp. 546, 549 (D.D.C.1970).

Plaintiff and Defendant had agreed that several depositions would be taken on July 29, 1987. When the brouhaha over the privileged documents developed, Plaintiff unilaterally cancelled these depositions.

Since Plaintiff's counsel already possessed documents 1 through 4 when he cancelled the depositions, and this Court has held that he is not entitled to documents Nos. 5–7, Plaintiff's counsel has succeeded only in further delaying this case. Nonetheless, it is this Court's opinion that so many of the depositions mentioned in the Court's Order of June 22, 1987, as have not yet been accomplished, should be allowed; *provided* that on no

account shall these depositions be a cause for delaying the trial of this case on any calendar on which it may appear.

Judgment will be entered in accordance with this Memorandum of Decision.

### ORDER AND JUDGMENT

THIS MATTER is before the Court on Defendant's Motion for partial summary judgment, Plaintiff's Motion for partial summary judgment, and Plaintiff's Motions to compel production, for an *in camera* inspection, and to reschedule discovery. This Order and Judgment is entered in accordance with the Memorandum of Decision filed simultaneously herewith.

NOW, THEREFORE, IT IS ORDERED AND ADJUDGED:

(1) That Defendant's Motion for partial summary judgment on the issue of statutory damages and attorney's fees is GRANTED;

(2) That Plaintiff's Motion for partial summary judgment on the issue of statutory damages and attorney's fees is DENIED;

(3) That Plaintiff's Motion to compel production of documents is DENIED insofar as it relates to documents not already produced;

(4) That Plaintiff's Motion for an *in camera* review is GRANTED; and

(5) That Plaintiff's Motion to reschedule discovery is GRANTED and discovery is rescheduled as follows:

Plaintiff shall have forty-five (45) days from the date of this Order and Judgment to accomplish the depositions as mentioned in this Court's Order of June 22, 1987; *provided,* that the scheduling of these depositions shall *not* be cause for delay of the trial of this case on any calendar on which it may appear.