819 So.2d 818 (2002)
BEAR WOLF, INC. and Elliott, McKiever & Stowe, Inc., Appellants,
v.
HARTFORD INSURANCE COMPANY OF THE SOUTHEAST, Appellee.
Nos. 4D01-1843, 4D01-1916, 4D01-2820, 4D01-2821.
District Court of Appeal of Florida, Fourth District.
May 1, 2002.
Rehearing Denied July 10, 2002.
*819 Daniel S. Polley of Malin, Haley & Di-Maggio, P.A., Ft. Lauderdale for appellant Bear Wolf, Inc.
Hinda Klein and Mara Shlackman of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for appellant Elliott, McKiever & Stowe, Inc.
Todd L. Wallen and David A. Seiler of Shook, Hardy & Bacon, LLP, Miami, for appellee.
KLEIN, J.
Bear Wolf, Inc., the insured, and the agency procuring the insurance, Elliott, McKeiver & Stowe, Inc., appeal a declaratory judgment holding that the insurer Hartford Insurance Company, had no duty to defend, under its commercial general liability policy, a claim for advertising injury. We reverse.
In the underlying proceedings, Kevin Harrington Enterprises, which makes cigar-shaped lighters, sued Bear Wolf, the insured, because the insured was displaying and promoting sales of similar cigar-shaped lighters at a trade show. The insured's liability policy issued by Hartford provided:
I. COVERAGE B. PERSONAL AND ADVERTISING INJURY
1. Insuring Agreement.
* * *
b. This insurance applies to:
* * *
(2) "Advertising injury" caused by an "advertisement" of your goods, products, or services; ...
* * *
II. The Definition of "advertising injury" in DEFINITIONS (section V) is replaced by the following:
1. "Advertising injury" means injury arising out of one or more of the following offenses:
* * *
c. Copying, in your "advertisement", a person's or organizations "advertising idea" or style of "advertisement"; or
d. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement."
II. The following additional definitions are added to DEFINITIONS (Section V):
1. "Advertisement" means a dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:
a. (1) Radio;
(2) Television;
(3) Billboard;

*820 (4) Magazine;
(5) Newspaper, or
b. Any other publication that is given widespread public distribution. (emphasis added.)
The insured contends that the allegations of the complaint against it gave rise to a duty to defend because the complaint alleged an "advertisement" as defined under the underlined section 1.b. The trial court held that the complaint did not allege facts constituting "widespread public distribution," a term which was not defined.
Harrington generally alleged that it had contracted with two companies in China to produce a mold for its copyrighted cigar lighter design and to manufacture lighters from that mold. Neither of those companies met Harrington's quality expectations and Harrington ultimately used another company to manufacture the product. One of the original two companies, however, furnished a copy of the mold to the insured, which was using the mold to produce unauthorized reproductions of the cigar lighter. This production and distribution of Harrington's copyrighted product constituted copyright and trade dress infringement.
The allegations which the insured claims trigger the duty to defend for advertising injury are that a distributor for Bear Wolf, at the International Cigar Expo in Las Vegas, "one of the largest trade shows in the cigar industry," had a booth displaying Bear Wolf's product and was marketing and taking orders. Photographs of the display were attached to the complaint. They showed a box resembling a cigar box, but larger, with the lid in a vertical position. The lid contained a large picture of the lighter, and two lighters were propped up against the box.
The trial court concluded that the display was not an "advertisement" because, having only been on display at a trade show, it was not a publication given "widespread public distribution."
The insured argues that the trial court gave a narrow definition to the term "widespread public distribution," when it should have interpreted the term liberally in favor of the insured and strictly against the insurer. Auto-Owners Ins. v. Anderson, 756 So.2d 29 (Fla.2000)(if policy language is susceptible to more than one reasonable interpretation, the interpretation favoring coverage should be adopted).
The insured also contends that the trial court wrongfully assumed that the trade show was not open to the public when this fact could not be determined from reading the complaint. We agree. If the allegations of the complaint leave any doubt regarding the duty to defend, the insurer is required to defend. New Amsterdam Cas. Co. v. Knowles, 95 So.2d 413 (Fla.1957).
In addition, it has been held that displaying a copyrighted work at a trade show which is restricted to members of a trade association and qualified buyers would constitute a display of "copyrighted work publically" under the federal Copyright Act, 17 U.S.C. § 106(5). Thomas v. Pansy Ellen Prods., Inc., 672 F.Supp. 237, 1988 Copr.L.Dec. P 26235, 5 U.S.P.Q.2d 1322 (W.D.N.C.1987).
In the alternative the insurer argues that the display could not constitute an advertisement, citing cases which hold that the product itself is not an advertisement. See, e.g., Farmington Cas. Co. v. Cyberlogic Tech., Inc., 996 F.Supp. 695 (E.D.Mich. 1998). In those cases, however, the claim of advertising injury was based solely on distribution of the product.
In attempting to determine what is meant by "widespread public distribution," it is appropriate for us to examine the *821 entire definition of advertisement contained in the policy which is "a dissemination of information or images that has the purpose of inducing the sale of goods ... through:"
a. (1) Radio;
(2) Television;
(3) Billboard;
(4) Magazine;
(5) Newspaper, or
b. Any other publication that is given widespread public distribution.
The term "widespread public distribution" must be read in connection with the preceding references to radio, television, etc. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla. 1979)(courts, when interpreting an insurance policy, should look at the policy as a whole).
At oral argument, counsel for the insurer conceded, as well he should have, that if the product had been advertised on a single billboard with very little exposure to the public because of its isolated location, it would qualify under the policy as an advertisement. Along those same lines, an advertisement in a small town newspaper with very limited circulation would also be an advertisement. Given those examples, we see no reason to read "widespread public distribution" so narrowly as to exclude a display at one of the industry's largest trade shows, whether it was open to the general public or not. On the contrary, coverage clauses are to be construed broadly. Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176 (Fla. 4th DCA 1997).
We therefore hold that Hartford had a duty to defend.
WARNER and MAY, JJ., concur.