**SPORTSMANS WAREHOUSE, INC., Plaintiff,**

v.

**Steven G. FAIR, and Stephen C. LeBlanc, Defendants.**

**and**

**Stephen C. LeBlanc, Cross Claimant,**

v.

**Steven G. Fair, Cross Defendant.**

**Civil Action No. 07–cv–01271–WDM–KMT.**

United States District Court, D. Colorado.

Aug. 5, 2008.

Bruce Howard Little, Christopher Ryan Sullivan, Lindquist & Vennum, PLLP, Minneapolis, MN, John Andrew Chanin, Lindquist & Vennum, PLLP, Denver, CO, for Plaintiff.

Steven G. Fair, Sandy, OR, pro se.

Gregory D. Leibold, Peter Attila Gergely, Merchant & Gould, PC, Denver, CO, for Defendants/Cross Claimant.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

MILLER, Judge.

This case is before me on the recommendation (doc no 338) of Magistrate Judge Kathleen M. Tafoya regarding numerous outstanding motions (docs no 73, 151, 158, 166, 167, 189, 201, 224, 227, 231, 271, 289). Magistrate Judge Tafoya recommends that summary judgment be entered declaring that certain sculptures by Defendant and Cross Claimant Stephen C. LeBlanc ("LeBlanc") do not infringe on the copyrighted sculpture of Defendant and Cross Defendant Steven G. Fair ("Fair"). This would dispose of most of the outstanding motions on the merits or render them moot. Magistrate Judge Tafoya also recommends denying Fair's motion to dismiss LeBlanc's cross claim against Fair for defamation. Fair filed timely objections [1] to the recommendation and therefore is entitled to *de novo* review. 28 U.S.C. § 636(b). For the reasons that follow, I will accept Magistrate Judge Tafoya's recommendation as modified.

### Background

Fair claims that LeBlanc's bronze monumental elk sculptures, entitled "I'm the Boss" and "The Challenger," infringe on Fair's copyrighted bronze sculpture entitled "Royal Entrance." Although the background of the dispute is set forth in detail in the recommendation, I will recite it again here to address the points particularly relevant to Fair's objections and the infringement analysis.

LeBlanc and Fair are both artists and sculptors. Fair created a sculpture of an elk, initially in clay and then later cast in bronze, entitled "Royal Entrance." According to Fair, he began "Royal Entrance" in late 1994 and displayed it in clay form at art shows starting January 1995. The mold of "Royal Entrance" was made in April 2005 and bronze versions of the sculpture were sold thereafter. "Royal Entrance" is a realistic "maquette," that is, a small sculpture prepared for the possible purpose of creating a monumental or larger-than-life size work, and is finished in a colored patina. "Royal Entrance" depicts a male elk with large antlers walking downhill, with the hoof of a front leg raised. The head is turned and slightly low and the nose is somewhat raised. Fair

---

1. Indeed, Fair filed four separate documents (doc nos 346, 347, 348, and 349), amounting to over 130 pages, containing his objections, most of which are repetitious and/or unintelligible. These and nearly all other filings by Fair have clearly violated this Court's local rule requiring that such documents be "concise." D.C.COLO.LCivR. 7.1(H). Nonetheless, I will accept these documents and address Fair's objections to the extent they can be discerned.

contends that the sculpture shows a bull elk during mating season in "flehmen," a behavior of many ungulates, including elk, involving the curling of the upper lip to assist in the scenting of females. Plaintiff registered "Royal Entrance" with the United States Copyright Office, Registration No. VA–1–382–611, on or around October 2, 2006. On the registration, he initially identified the first "publication" of the sculpture as 2005 but thereafter filed a correction, asserting that "Royal Entrance" was first published in 1995.

LeBlanc is also a sculptor of realistic wildlife art. He created a life-size or monumental elk sculpture entitled "Looking for Trouble" in 1986. LeBlanc provides a photograph of the large version of "Looking for Trouble" in Exhibit A–9 of his Motion for Summary Judgment (doc no 73–11). The elk depicted in that sculpture also appears to be walking, but its head is raised and the mouth appears to be closed, although the photograph is dark and somewhat difficult to discern.[2] Thereafter, LeBlanc began working on another elk sculpture. LeBlanc created a maquette in 1993 and first displayed it in 1994. LeBlanc presents as evidence an affidavit from a client, Donald Roden, who affirms that he saw the maquette in February 1994 and purchased it shortly thereafter; photographs of the elk sculpture owned by Roden are also provided. Exh. A–12 to LeBlanc Motion for S.J. (doc no 73–14). This maquette, which Magistrate Judge Tafoya refers to as the "Roden sculpture" is the source of many of Fair's objections and so I will address the factual issues he raises.

According to LeBlanc, the maquette purchased by Roden was called "I'm the Boss" and was the model for the monumental sculpture that Fair contends infringes on "Royal Entrance." LeBlanc also provides another photograph of what he claims is the "I'm the Boss" maquette,

which indeed appears to be identical to the Roden sculpture. Exh. A–6 to LeBlanc Motion for S.J. (doc no 73–8). Fair disputes that the Roden maquette is the basis of the monumental "I'm the Boss." As grounds, he provides photographs from the website of Angler Art, a gallery that apparently carries LeBlanc's sculptures. The Angler Art website has a photograph of an elk sculpture maquette identical to the Roden sculpture and the purported "I'm the Boss" maquette, but on the website it is entitled "Looking for Trouble." Accordingly, Fair argues that the Roden maquette is actually the model for the monumental "Looking for Trouble" sculpture, not "I'm the Boss," and that LeBlanc's first rendering of "I'm the Boss" does not precede Fair's creation of Royal Entrance. In a footnote, LeBlanc asserts that the Angler Art website, which he apparently does not control, contains errors. LeBlanc Reply (doc no 124) at 4, n. 3. Magistrate Judge Tafoya concluded, *inter alia*, that even if the Roden sculpture was not the model for the monumental "I'm the Boss," it was undisputedly made before Fair created his first clay version of "Royal Entrance;" therefore, LeBlanc could not have copied its elements from Fair.

I agree with Magistrate Judge Tafoya that the dispute about the title of the Roden sculpture is immaterial. Regardless of whether the Roden maquette is the maquette of "I'm the Boss" or of "Looking for Trouble," it was unquestionably created before Fair sculpted "Royal Entrance." Moreover, it contains the features of the monumental version of "I'm the Boss" that Fair claims were copied from "Royal Entrance," including the depiction of a male elk with large antlers, walking downhill, with one front hoof raised to show walking, with a slightly turned lowered head and

**2.** Fair does not assert that "Looking for Trouble" infringes on his copyright.

raised nose, and with the mouth open, lips back and teeth showing; LeBlanc's large and small sculptures are essentially the same. Since LeBlanc undisputedly created a sculpture, regardless of its title, of a male elk in the same pose, attitude, etc., as the monumental sculpture "I'm the Boss" before Fair, he cannot have copied these elements from Fair.[3]

Monumental versions of "I'm the Boss" were sold and installed in a variety of locations beginning no later than 1998, including one installed at a Sportsman's Warehouse sporting goods store in Portland, Oregon. Sportsman's Warehouse has purchased numerous bronze sculptures from LeBlanc for its stores since 2001. The sculpture at the Portland store has been on display since approximately July 25, 2005. Fair approached Sportsman's Warehouse in late 2004 or 2005, offering to make sculptures for purchase by the store and sending photographs of his work. Sportsman's Warehouse declined to buy Fair's artwork. Fair thereafter apparently saw the sculpture of "I'm the Boss" at the Portland Sportsman's Warehouse and began corresponding with LeBlanc and Sportsman's Warehouse, alleging that LeBlanc had made an unauthorized copy of "Royal Entrance" and violated Fair's copyright. LeBlanc has never filed copyright registrations of "Looking for Trouble," "I'm the Boss," or "The Challenger."

Plaintiff Sportsman's Warehouse filed a complaint in this Court under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that "I'm the Boss" does not infringe on Fair's copyright-protected original work and that Sportsman's Warehouse cannot be liable as a vicarious or contributory infringer. Sportsman's Warehouse named both LeBlanc and Fair as defendants. LeBlanc also asserted cross claims against Fair for defamation and for a declaration of non-infringement.

*Discussion*

1. Copyright Infringement Principles

■ To succeed on a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) that the defendant copied constituent elements of the work that are original to the plaintiff (i.e., elements protectable by copyright). *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 (10th Cir.2008). A Copyright Office Certificate of Registration obtained within five years of first publication constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. 410(c). It is undisputed that Fair's copyright registration was obtained more than five years after the first publication of "Royal Entrance" and therefore there is no presumption of validity of the copyright. Even where a copyright is presumed valid, however, a defendant may overcome the presumption "by presenting evidence and legal argument sufficient to establish that the works in question were not entitled to copyright protection." *Meshwerks*, 528 F.3d at 1262. Copyright protection extends only to "original works of authorship." 17 U.S.C. § 102(a).

■ The operative distinction in determining originality is between "ideas or facts in the world" on the one hand, which cannot be copyrighted, and "a particular expression of that idea or fact, that can be." *Meshwerks*, 528 F.3d at 1264 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). An accurate portrayal of something that exists in the world

---

**3.** Moreover, I agree with Magistrate Judge Tafoya that the maquette looks distinctly different from the monumental elk sculpture shown in LeBlanc's Exhibit A–9 (doc no 73–11), which is indisputably titled "Looking for Trouble."

(i.e., facts and ideas, such as a particular bottle) cannot be copyrighted but original expressions of those facts and ideas receive "thin" copyright protection, perhaps only from exact duplication by others. *Ets–Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir.2003). In the context of realistic wildlife sculpture, one court has noted that a purported copyright holder "may not prevent others from copying aspects of his sculptures resulting from either [the animal's] physiology or from [the animal's] depiction in the [particular artistic] medium." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir.2003). "Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters." *Id.* at 813. However, a combination of unprotectable elements may qualify for protection if those elements "are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Id.* at 811. In addition, an artist may vary "the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal" or vary "the background, lighting, or perspective" to create original elements. *Id.* at 813.

■ For the second part of the infringement claim (copying), a plaintiff can indirectly prove copying by demonstrating that the defendant had access to the plaintiff's copyrighted work and that there are probative similarities between the between the copyrighted material and the allegedly copied material. *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284

(10th Cir.1996). To determine whether the allegedly infringing product is substantially similar to the *protectable* elements of the plaintiff's work, the Tenth Circuit instructs me to apply the "abstraction-filtration-comparison test." *Id.* This requires separating the ideas from the particular expression of the work. *Id.* at 1285. Then, I filter out the non-protectable components of the product from the original expression and compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar. *Id.* Elements of a copyright defendant's work that were created prior to access to a plaintiff's work are also filtered out before the defendant's work is compared to the plaintiff's. *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film·Corp.*, 361 F.3d 312, 326 (6th Cir.2004).

### 2. The Recommendation

■ Magistrate Judge Tafoya concludes that the Roden maquette, sold in early 1994, looks almost identical to the monumental version of "I'm the Boss."[4] This small sculpture preceded or coincided with the first publication of "Royal Entrance." Moreover, applying the "abstraction-filtration-comparison" test, Magistrate Judge Tafoya concluded that almost all the individual elements over which Fair claims copyright protection have to be removed because they occurred in LeBlanc's prior works or are unprotectable because they derive from nature, i.e., from the non-protectable idea of a bull elk in flehmen. "The sculptural elements described by Mr. Fair are not original to 'Royal Entrance' because each and every one of them is dictated by the behavior of an elk exhibiting the flehmen response." Recommenda-

---

4. LeBlanc offers as evidence letters from other collectors who allegedly purchased maquettes of "I'm the Boss." However, the statements do not include photographs; given the dispute over the title of the maquette purchased by Roden, I will not consider this evidence.

tion at 1196. The only element possibly original to "Royal Entrance" is the pose of the elk in the sculpture; however, as noted by Magistrate Judge Tafoya, "the pose was naturally possible and had been recreated before Fair created 'Royal Entrance' in his mind." *Id.* at 1198.

In addition to the lack of protectable elements, Magistrate Judge Tafoya determined that there is no direct or indirect evidence of copying by LeBlanc. The sculptures were not produced from the same mold and differ in a number of respects, including antlers, veining, and leg position. I note that the size and finish of LeBlanc's and Fair's sculptures are different as well. Moreover, Magistrate Judge Tafoya observes that Fair did not offer evidence showing that LeBlanc had access to Fair's work before LeBlanc created the Roden maquette and that any similarities between the work are of solely non-copyrightable elements. Accordingly, Magistrate Judge Tafoya recommends granting summary judgment of non-infringement in favor of LeBlanc and Sportsman's Warehouse. I agree with this analysis and will grant summary judgment on these grounds.

With respect to Fair's motion to dismiss LeBlanc's claim of defamation, Magistrate Judge Tafoya concluded that LeBlanc had alleged sufficient facts to establish the elements of defamation, including a defamatory statement, publication to a third party, fault amounting to at least negligence, and damages. Recommendation at 1201. Accordingly, she recommends that Fair's motion to dismiss the defamation claim be denied. I agree with this portion of the recommendation as well.

### 3. *Fair's Objections*

Fair's filings have had a tendency to be overlong and repetitious and his objections to the recommendation are no exception. Nonetheless, I have been able to distill the following arguments and categories of objections from the documents he filed in response to the recommendation: (1) there is no jurisdiction and/or Sportsman's Warehouse and LeBlanc do not have standing because they are not copyright holders or persons protected under the copyright law; (2) "Royal Entrance" was published and affixed with the symbol "©" earlier than the Magistrate Judge recognized in the recommendation; (3) LeBlanc's Exhibit A–6 to his Motion for Summary Judgment (doc no 73–8) is not a maquette of "I'm the Boss" as he represents in his accompanying affidavit but actually a maquette of "Looking for Trouble," as evidenced by the photograph on the Angler Art website, and LeBlanc has made false representations to the Court in this regard; (4) LeBlanc's work is not copyrighted, and so he cannot copy or display his own work; (5) the Roden elk conveys aggression and challenge, like the concept of "Looking for Trouble," and therefore cannot be the model for "I'm the Boss," which concerns mating or sex; (6) Magistrate Judge Tafoya erred by relying on photographs instead of ordering that the sculptures themselves be produced for examination; (7) LeBlanc does not "dispute" that he attended certain art shows in 1995 and therefore could have seen "Royal Entrance" before he created the monumental "I'm the Boss;" (8) Magistrate Judge Tafoya applied the Copyright Act of 1976 instead of the Copyright Act of 1989 and relied on *Mazer v. Stein,* 347 U.S. 201, 218, 74 S.Ct. 460, 98 L.Ed. 630 (1954), which Fair claims was superseded by the Copyright Act of 1976; (9) LeBlanc's accusations in email (before litigation commenced) that Fair had infringed on LeBlanc's earlier work was wrongful because LeBlanc's works are not copyrighted; (10) the pose of "Royal Entrance" is original and protected and LeBlanc's use of the same pose is infringing; (11) Magistrate

Judge Tafoya's conclusion will mean that authors of realistic wildlife sculpture will not be protected by copyright; (12) the only difference between the Roden maquette and the "I'm the Boss" monumental sculpture is the depiction of the flehmen response, which must have been copied from Fair's sculpture; (13) Fair was denied due process because certain documents were stricken because of his failure to follow the local rules of this court; and (14) Fair was denied due process of law because of his political beliefs.

First, Fair's claim that this Court lacks jurisdiction or that LeBlanc and/or Sportsman's Warehouse lack standing is unavailing.[5] Fair appears to be operating under the assumption that an action relating to copyright can only be brought by a copyright holder pursuant to 17 U.S.C. § 411, and since neither Sportsman's Warehouse nor LeBlanc hold copyrights, there is no jurisdiction or cause of action. Fair misapprehends the nature of this case. LeBlanc and Sportsman's Warehouse seek a declaration of non-infringement. The federal declaratory judgment statute, 28 U.S.C. § 2201, vests a district court with the authority to declare the rights and other legal relations of any interested party in "a case of actual controversy" within the court's jurisdiction. Fair has accused both LeBlanc and Sportsman's Warehouse of infringing on his copyright, and indeed has apparently commenced litigation in Oregon. Therefore, there is an actual controversy between these parties and it is appropriate to declare the rights and obligations of the parties with respect to the infringement issue.

Moreover, I have jurisdiction pursuant to 28 U.S.C. § 1338, which gives the federal district courts original jurisdiction over any civil action "arising under any Act of Congress relating to ... copyrights." This case clearly arises from federal copyright law, as it requires a determination of the validity of Fair's copyright on "Royal Entrance" as well as a determination of whether LeBlanc's sculptures infringe on any protectable elements of the copyrighted artwork. *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1050–51 (10th Cir.2006) (an action arises under Copyright Act, for purposes of subject matter jurisdiction pursuant to section 1338 if (1) complaint is for a remedy expressly granted by the Act, such as a suit for infringement, or (2) complaint asserts a claim requiring construction of the Copyright Act). It is of no import that Fair is a defendant rather than a plaintiff as the issues are the same as they would be had Fair initiated this action himself. Accordingly, these objections are overruled.

Fair devotes a significant portion of his objections arguing that the Magistrate Judge disregarded evidence he presented which established that he began to display "Royal Entrance" as early as January 1995. I am not persuaded that Magistrate Judge Tafoya disregarded this evidence but conclude that Fair's objection on this point is immaterial. It is undisputed that the Roden maquette was displayed and purchased in February 1994, which is earlier than the alleged first appearance of "Royal Entrance." Fair also appears to argue that "Royal Entrance" was copyrighted at its inception because he affixed a copyright symbol, "©", which appears in the cast bronze. Again, even if true, this is immaterial if the sculpture contains no original elements protectable by copyright.

I have already addressed the third general objection, which concerns whether the Roden maquette is the same as the maquette advertised on the Angler Art web-

**5.** Fair also uses this argument as the basis for his "Expedited Motion to Dismiss Under FRCP 12(b) for Failure to State a Claim Upon Which Relief May be Granted" (doc no 158).

site entitled "Looking for Trouble." I agree with Fair that the sculpture displayed in the Angler Art website photograph is identical to the Roden maquette and to the photograph labeled "I'm the Boss" maquette (Exh. A–6 to LeBlanc Motion for S.J.). However, I disagree with Fair that there is any significant difference between this maquette and the monumental version of "I'm the Boss." The maquette contains the same physical and artistic elements as the monumental "I'm the Boss," including the position of the legs, back and head, antlers, as well as facial expression and shape of the mouth and was clearly the model for the larger version. Accordingly, it is irrelevant whether the maquette recycled elements of an earlier sculpture such as "Looking for Trouble" or is now being sold as "Looking for Trouble;" all that matters is that LeBlanc conceived and created all the significant elements of "I'm the Boss" before Fair began working on "Royal Entrance." I also overrule Fair's fifth objection, that the Roden maquette could not have been the model for the monumental "I'm the Boss" because it shows aggression, not flehmen or physicality relating to sex and mating. As noted, the key elements LeBlanc's small and large sculpture are the same (and, moreover, are almost entirely dictated by the subject matter and nature); I disagree with Fair's assessment of the "meaning" of the maquette and larger sculpture.

▇▇▇ The fourth set of objections arise from Fair's numerous statements referring to the "criminal" sculpture "Looking for Trouble" and his repeated emphasis that LeBlanc's sculptures are not copyrighted. Fair seems to be arguing that because LeBlanc has not copyrighted the three sculptures at issue here, LeBlanc cannot display or copy his own creations. *See, e.g.,* Fair's Objection to Recommendation of United States Magistrate Judge (doc no 346) at 28 ("LeBlanc ... violated Title 17

U.S.C. 106(1)(2)(3)(5) by failure to Copyright Notice, 1976 Title 17 U.S.C. 401, criminally and civilly, public display for sale, and LeBlanc currently violates the U.S. Copyright Act of 1976 criminally and civilly by public display of 1990 Monument 'Looking for Trouble' and by false allegation against Fair"). This argument distorts the copyright law. 17 U.S.C. § 106 provides that an owner under copyright has the exclusive right to reproduce the copyrighted work, prepare derivative works based upon the copyrighted work, to distribute copies of or display the copyrighted work; it does not mean that an artist who does not file a copyright registration is precluded from reproducing, copying, displaying, or creating derivative pieces from his or her own work. Artists are not required to obtain copyrights and can do what they wish, within the law, with their own work. These objections are therefore overruled.

Fair's sixth objection is that Magistrate Judge Tafoya erred by not examining the actual sculptures before issuing her recommendation. I disagree. The photographs provided are adequate to make comparisons between the sculptures, with the exception of the photograph purporting to show the monumental version of "Looking for Trouble" (Exh. A–9 to LeBlanc's Motion for S.J.). They are also adequate for application of the "abstraction-filtration-comparison test," which shows that the elements Fair claims are protected are instead from LeBlanc's previous works or from the public domain, i.e., from the idea in nature of a bull elk displaying flehmen response. This objection is also overruled.

▇▇▇ Fair's seventh set of objections appear to be intended to demonstrate that LeBlanc had access to "Royal Entrance" before LeBlanc created the monumental "I'm the Boss." Fair states several times that LeBlanc "does not dispute" that he

attended several art shows in 1995 where "Royal Entrance" may have been displayed in clay or bronze form. However, Fair has the burden of demonstrating that LeBlanc had access to the piece and Fair offers no evidence of this. The closest he comes is a document entitled "Defendant and Cross–Defendant Steven George Fair's Notice of Correction and Supplemental Authority" (doc no 264), filed March 25, 2008. In that document, Fair contends that he was approached by another artist while at the CM. Russell Auction in Great Falls, Montana in March 2008. *Id.* The unnamed sculptor allegedly told Fair that LeBlanc attended the Olsen Art Shows in Minneapolis/St. Paul Minnesota in April 1995 when "Royal Entrance" was displayed. *Id.* This is inadmissible hearsay evidence that cannot be used to create a genuine issue of material fact under Fed.R.Civ.P. 56(e). Moreover, as discussed above, since it is undisputed that LeBlanc had already created a maquette substantially similar to the later monumental "I'm the Boss," his access to Fair's work in April 1995 is immaterial.

Fair also argues, in his eighth category of objections, that Magistrate Judge Tafoya applied the wrong law. This argument also fails. The statutory citations relied upon by Magistrate Judge Tafoya are to the current version of the United States Code and are accurate. In addition, *Mazer v. Stein*, 347 U.S. 201, 218, 74 S.Ct. 460, 98 L.Ed. 630 (1954), cited by Magistrate Judge Tafoya for several basic propositions regarding the scope of copyright protection, is valid law. Fair has not identified any legal authority that conflicts with the principles for which the case is cited.

With respect to the ninth type of objection, Fair makes much of statements made in heated email exchanges between Fair and LeBlanc before and after the commencement of this litigation. In one of them, LeBlanc states "Your piece is an infringement of my piece entitled Looking for trouble That won the best of Show and best sculpture in the 1986 Ducks Unlimited National show held in Kansas City. I would contend that is where you saw my work and did your own version of it." (Doc no 119–2 at p. 9). None of this is material or shows that Magistrate Judge Tafoya's analysis or recommendation is in error. LeBlanc has not asserted an infringement claim against Fair in this litigation and it is irrelevant that he once accused Fair of possibly copying his work. Fair also has not asserted a defamation claim against LeBlanc. The statements by LeBlanc do not contain any admissions or other evidence that he appropriated Fair's sculpture; rather, they contain vehement denials as well as other strong disputes with Fair about numerous topics.[6] Fair's objections relating to LeBlanc's statements in the emails is therefore overruled.

Fair also argues that the pose of "Royal Entrance" is original and protected. Although numerous original elements, including pose, could be protected by copyright under some circumstances, since LeBlanc independently created a sculpture of an elk in the same pose before Fair, this element is not protected. Fair's tenth objection is overruled.

---

**6.** Fair also contends that a statement by LeBlanc shows LeBlanc's alleged willingness to copy Fair's work. Specifically, in one email, LeBlanc pointed out, "You will also find that there are and have been made tons of elk sculptures done in that pose I know of 3 that I saw last week end. It is like a eagle fishing a fish out of the water. They are everywhere.

Your copyright protects you from someone taking your piece and pouring a mold off of it." (Doc no 119–2 at p. 8). These are essentially correct statements of the law of copyright regarding realistic wildlife depictions and do not, as Fair asserts, show that LeBlanc believes he could copy the work other artists without restriction.

Fair's eleventh type of objection is his concern that a finding of non-infringement means that authors of realistic wildlife art will not be protected by copyright. However, as Magistrate Judge Tafoya noted, a copyright provides limited protection and its primary purpose is to promote originality. It is clear that Fair is a skilled artist with a passion for his work. However, the United States Supreme Court has already rejected the notion that skill and hard work suffice for copyright protection. *Feist,* 499 U.S. at 359–60, 111 S.Ct. 1282. Fair's very talent for accurately recreating what exists in nature results in his works receiving "thin" copyright protection, "comprising no more than his original contribution to ideas already in the public domain." *Satava,* 323 F.3d at 812. Fair's copyright means that others cannot reproduce his work exactly (and may protect original elements not at issue in this case), but it does not give him a monopoly on portraying subjects that occur in nature or aspects of animals that naturally result from their physiology, behavior, or environment.

Fair also appears to argue that the Roden maquette is not the model for "I'm the Boss" because it does not portray the flehmen response. Again, even if there is a dispute in this regard, it need not be resolved to make a determination of non-infringement. The physiology and attitude of an elk in flehmen is in the public domain and cannot be protected by copyright. Accordingly, even if the only significant change between the 1994 maquette and the monumental sculpture of "I'm the Boss" were the addition of the flehmen response, it would still not support a claim of infringement.

Finally, Fair's thirteenth and fourteenth objections repeat assertions that have appeared throughout his filings in this Court. Fair was warned repeatedly that he had to follow Federal Rules of Civil Procedure and the local rules of this Court and when his filings failed to conform they were stricken. Fair has not demonstrated that the analysis of the copyright infringement issue would be any different had those documents not been stricken and so this objection is overruled. Similarly, Fair has presented many pages filled with his views on federal authority, much of it incomprehensible and irrelevant to these proceedings. Again, Fair has not demonstrated any denial of due process or shown that his political views have had any effect on the infringement analysis here.

### 4. *LeBlanc's Defamation Claim*

 A declaration of non-infringement disposes of the primary issue in this case and resolves the claim by Sportsman's Warehouse against LeBlanc and Fair, as well as one of LeBlanc's cross claims against Fair. This leaves pending LeBlanc's remaining cross claim of defamation against Fair, a claim based on state law. Magistrate Judge Tafoya did not specifically address whether this claim should be retained in this Court. Although LeBlanc and Fair are residents of different states and are therefore diverse for the purposes of 28 U.S.C. § 1332, it does not appear that the amount in controversy is sufficient to confer jurisdiction on this Court to hear the case. Given the dismissal of the federal copyright question, I conclude that I have discretion to dismiss the defamation claim. "[T]he pre-trial dismissal of all federal law claims, leaving only a state law claim, generally prevents a district court from reviewing the merits of the state law claim." *McWilliams v. Jefferson County,* 463 F.3d 1113, 1117 (10th Cir.2006); 28 U.S.C. § 1367(c)(3); *see also Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be

considered under the pendant jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because LeBlanc's cross claim primarily involves facts unrelated to the infringement analysis and concerns state law principles, including possibly choice of law questions since both Oregon and Colorado could have an interest in the issue, it appears that judicial efficiency and comity support dismissal of the defamation without prejudice.

Accordingly, it is ordered:

1. The recommendation (doc no 338) of Magistrate Judge Kathleen M. Tafoya is accepted as modified.

2. Defendant and Cross–Claimant Stephen C. LeBlanc's Motion for Summary Judgment (doc no 73) and Plaintiff Sportsman's Warehouse, Inc.'s Motion for Summary Judgment (doc no 271) for declaration of non-infringement are granted. For the reasons stated, it is hereby declared and decreed pursuant to 28 U.S.C. § 2201 that the two elk sculptures created by LeBlanc and acquired by Sportsman's Warehouse entitled "I'm the Boss" and "The Challenger" do not infringe on any copyright-protected elements of Defendant Steven G. Fair's elk sculpture "Royal Entrance".

3. LeBlanc's Motion for Order Setting Oral Argument on Motion for Summary Judgment (doc no 151) is denied as moot.

4. Fair's Expedited Motion to Dismiss under FRCP 12(b) for Failure to State a Claim Upon Which Relief May be Granted (doc no 158), Fair's First Amended Expedited Motion to Dismiss under FRCP 12(b) for Want of Jurisdiction and for Failure to State a Claim Upon Which Relief May be Granted (doc no 231), and Fair's Motion to Dismiss Cross Claimant LeBlanc's Complaint of Defamation for Failure to State a Claim Upon Which Relief May be Granted Pursuant to FRCP Rule 12(b)(6) (doc no 289) are denied.

5. Fair's Motion for Declaratory Judgment of Infringement (doc *no* 224) is denied.

6. LeBlanc's Motion to Strike Defendant/Cross Defendant Fair's Motion for Declaratory Judgment of Infringement (doc no 227) is denied.

7. LeBlanc's Motion to Quash Subpoenas (doc no 201) is granted.

8. All remaining motions are denied as moot.

9. LeBlanc's defamation cross claim against Fair is dismissed without prejudice.

10. LeBlanc and Sportsman's Warehouse may have their costs.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

KATHLEEN M. TAFOYA, United States Magistrate Judge.

This matter is before the court on "Defendant and Cross–Claimant Stephen C. LeBlanc's Motion for Summary Judgment" ("LeBlanc SJ Mtn." [Doc. No. 73, filed October 26, 2007]); "Defendant and Cross-claimant Stephen C. LeBlanc's Motion for Order Setting Oral Argument on Motion for Summary Judgment" ("LeBlanc SJ Mtn." [Doc. No. 151, filed January 30, 2008]; Steven G. Fair's "Expedited Motion to Dismiss under FRCP 12(b) for Failure to State a Claim Upon Which Relief May be Granted" ("Fair Mtn. Dism." [Doc. No. 158, filed January 29, 2008]), **and**[1] "First Amended Expedited Motion to Dismiss under FRCP 12(b) for

---

**1.** These two pleadings are almost identical in content.

Want of Jurisdiction and for Failure to State a Claim upon Which Relief May be Granted" ("Fair Mtn. Dism.2d" [Doc. No. 231, filed February 25, 2008] ); "Defendant and Cross–Defendant Steven George Fair's Motion to Dismiss Cross–Claimant LeBlanc's Complaint of Defamation for Failure to State a Claim Upon Which Relief May be Granted Pursuant to FRCP Rule 12(b)(6)" [Doc. No. 289, filed April 28, 2008]; "Defendant/Cross Defendant Fair's Motion for Declaratory Judgment of Infringement" ("Fair Decl. J. Mtn." [Doc. No. 224, filed February 21, 2008] ); "Defendant and Cross-claimant Stephen C. LeBlanc's Motion to Strike Defendant/Cross Defendant Fair's Motion For Declaratory Judgment of Infringement" [Doc. No. 227, filed February 21, 2008];and "Plaintiff Sportsman's Warehouse, Inc.'s Motion for Summary Judgment" ("Sptm. Mtn. SJ" [Doc. No. 271, filed March 31, 2008] ).

## I. Background

Given the redundant and repetitive nature of Steven George Fair's filings in this court, conventional procedural history would be lengthy, labored and singularly unhelpful. However, a synopsis of events will set the parties' pleadings in context.

Stephen C. LeBlanc is a sculptor specializing in realistic bronze recreations of wildlife. Several of his sculptures are featured as "monumental," or larger than life size, pieces which appear in front of Sportsman's Warehouse locations through out the country. In or about March 2005, Sportsman's Warehouse began receiving correspondence from Mr. Fair. Initially, Mr. Fair contacted Sportsman's Warehouse attempting to sell his sculpture. (Cross Defendant Steven George Fair's Answer to Stephen C. LeBlanc's Answer and Crossclaim (hereinafter "Fair Ans." [Doc. No. 103] ) at ¶ 17; Defendant/Cross–Defendant Fair's Response to Sportsman's Warehouse, Inc.'s Motion for Summary

Judgment (hereinafter "Fair Rsp. to S.W. Sum. J" [Doc. No. 287] ), Exh. A–11, 5 pages). At that time Fair sent a portfolio which contained a picture of his elk sculpture "Royal Entrance" to Sportsman's Warehouse; Sportsman's Warehouse declined to buy artwork from Mr. Fair. (*Id.*) Approximately two years later Fair sent correspondence to both Stephen C. LeBlanc and Sportsman's Warehouse accusing Mr. LeBlanc of copying the sculpture outside the Sportsman's Warehouse in Portland, Oregon, entitled "I'm the Boss," from Fair's small size sculpture, "Royal Entrance." (Fair Rsp. to S.W. Sum. J, Exh. A–2.) Between the first contact attempting to sell his sculpture to Sportsman's Warehouse and the second, Fair filed a copyright registration on "Royal Entrance." Both "I'm the Boss" and "Royal Entrance" depict one elk with fully developed antlers standing on rocks with one front leg raised to indicate movement or walking. (See pictures of the accused sculptures and Fair's "Royal Entrance" attached as exhibits to LeBlanc's Motion for Summ. J.) Both sculptures depict the elk in flehmen-a condition where male elk, as well as certain other mammals, curl their upper lip during the annual autumn rutting season to facilitate the transfer of scents to olfactory sense organs. (Fair Rsp. to S.W. Sum. J., Affidavit of Fair, ppg. 1–5.) The particular expression of live male elk in flehmen can be mistaken by the casual observer as elk bugling.

Fair also claimed that LeBlanc's sculpture of another elk entitled "The Challenger," a complementary monumental sculpture of an elk designed to be facing "I'm the Boss" was a copy of Fair's small sculpture "Royal Entrance." (LeBlanc Answer and Cross Claim at ¶ 14.)

Subsequent to Mr. Fair's second correspondence with it's accusation of copyright infringement, Sportsman's Warehouse ini-

tiated this lawsuit against both artists, seeking declaratory judgment "for the purpose of determining questions of actual controversy between the parties" under the Declaratory Judgement Act, 28 U.S.C. § 2201. (Compl.[Doc. No. 1].) Stephen C. LeBlanc answered the complaint on August 3, 2007 and filed cross claims against Steven Fair for Defamation and Declaratory Judgment of Non–Infringement. After a number of attempts to answer the complaint and the cross claims, Fair filed an Answer to the complaint and to LeBlanc's cross claim on November 26, 2008. [Doc. No. 103]. As is typical of Mr. Fair's filings, he filed another Answer as well. [Doc. No. 154, filed January 31, 2008].

## II. Standard

### A. Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works,* 36 F.3d at 1518 (*citing Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate

"specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see* Fed.R.Civ.P. 56(e) (2006); *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (on summary judgment, the court is not permitted on "to weigh the evidence and determine the truth of the matter;" court's role is limited "to determin[ing] whether there is a genuine issue for trial"). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997) (*citing Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque,* 150 F.3d 1271, 1274 (10th Cir.1998) (*citing Concrete Works,* 36 F.3d at 1517).

### B. Dismissal Pursuant to Fed. R.Civ.P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R.Civ.P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir.2003). Thus, all well-pleaded factual allegations in a complaint are accepted as true and con-

strued in the light most favorable to the plaintiff or proponent, in this case Stephen C. LeBlanc in asserting his two claims against Steven G. Fair. *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Further, the court is to make all reasonable inferences in the plaintiff's (LeBlanc's) favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir.2002). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Supreme Court articulated a new "plausibility" standard for motions to dismiss, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974.

### C. Declaratory Judgment

The Declaratory Judgment Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. A district court's decision to exercise its discretion and issue a declaratory judgment "will not be overturned absent a showing of clear abuse of . . . discretion." *Nautilus Ins. Co. v. 8160 South Memorial Drive, LLC*, 436 F.3d 1197, 1199 (10th Cir.2006) (quoting *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir.1989)). The substance of a declaratory judgment is reviewed just like any other district court decision. *Id.*; 12 James Wm. Moore, Moore's Federal Practice § 57.101[2] (3d ed.2005).

Whether LeBlanc infringed a copyright belonging to Fair on his sculpture "Royal Entrance" is at the heart of all the relevant claims. A ruling on summary judgment resolving the infringement issue, however, would not resolve all matters in the case, since LeBlanc's defamation claim would still be outstanding. Fair's motion to dismiss both of LeBlanc's claims against Fair is also addressed in this Recommendation.

To prevail on his assertion of copyright infringement by LeBlanc, Fair must establish that he owns a valid copyright and that LeBlanc copied original protectable elements of Fair's copyrighted work. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir.1996).

### III. Analysis of Copyright Infringement Issues

### A. Copyright

"To promote the Progress of Science and useful Arts, by securing for limited Time to Authors and Inventors the exclusive Right to their respective Writings and Discoveries," the United States Constitution empowers Congress to pass copyright laws. U.S. Const. Art. I § 8 cl. 8. The federal copyright laws are found in Title 17 of the United States Code. A copyright affords limited protection, however. It confers "only the sole right of multiplying copies." *Mazer v. Stein*, 347 U.S. 201, 218, 74 S.Ct. 460, 98 L.Ed. 630 (1954).

██ Copyright registration confers no right at all to the conception reflected in the registered subject matter. "Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea-not the idea itself." *Mazer* at 217, 74 S.Ct. 460. Accordingly, the prerequisites for copyright registration are minimal. A copy-

right registration is accomplished simply by filing a claim and depositing copies of the work with the Register of Copyrights, 17 U.S.C. §§ 401 et seq. There is minimal administrative investigation or determination of the validity of the claim. The work offered for registration need only be the product of the registrant; so long as it is not a plagiarized copy of another's effort, there is no requirement that the work differ substantially from prior works or that it contribute anything of value. "The copyright protects originality rather than novelty or invention." *Id.* at 218, 74 S.Ct. 460.

### B. Effect of Copyright Registration

■ The Copyright Act of 1976 provides that, with respect to published works, a Copyright Office Certificate of Registration obtained within five years of first publication "constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). A registration made more than five years after first publication of the work is still valid and subject to whatever weight the court, in its discretion, deems appropriate. *Religious Technology Center v. Netcom On–Line Communication Services, Inc.,* 923 F.Supp. 1231, 1242 (N.D.Cal.1995) (awarding the presumption of validity to copyrighted works registered more than five years after publication). Even in an event where the presumption of validity is applicable, however, "[w]here other evidence in the record casts doubt on the question, validity will not be assumed," *Bridge Publications, Inc. v. F.A.C.T.Net, Inc.,* 183 F.R.D. 254, 259 (D.Colo.1998) (quoting *Durham Industries Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir.1980)). *See also Tempo Music, Inc. v. Famous Music Corporation,* 838 F.Supp. 162, 167 (S.D.N.Y.1993).

Steven Fair filed his copyright registration on October 2, 2006, eleven years after he claims his first publication of "Royal Entrance" in 1995, and nine years after the first proven publication of "Royal Entrance" in the 1997 Wild Wings Catalogue as referenced *infra.* (Cert of Registration, Doc. No. 73–5; Fair Rsp. S.W. Sum. J., Exh. A–12, 1997 Wild Wings Originals Catalogue). It is notable that Mr. Fair did not even file for copyright registration on "Royal Entrance" until one and one-half years after he had submitted his portfolio containing pictures of "Royal Entrance" to Sportsmans Warehouse and Sportsmans Warehouse had declined to commission works from Mr. Fair. (Fair Ans./Affirmative Defenses ¶ 17.) Under the circumstances I find there are no grounds to extend the presumption of validity to this copyright registration and that the presumption of validity does not, therefore, apply to Fair's Certificate of Registration for "Royal Entrance."

### C. Effect of Fair's Claimed First Publication Date for "Royal Entrance"

It is undisputed that Stephen C. LeBlanc created a small (maquette) elk sculpture in 1993 and sold it to Donald Roden in early 1994. (LeBlanc Declaration, Doc. No. 73–3 [hereafter LeBlanc Decl.] at ¶ 6; Roden Declaration, Doc. No. 73–14 [hereafter Roden Decl.] at ¶¶ 2–4.) Fair disputes that portion of the Roden Declaration which states that the maquette Roden purchased was named "I'm the Boss." Fair disputes that Roden's sculpture was the original maquette for the later created monumental sculpture purchased by Sportsman's Warehouse. (Fair Rsp. S.W. Sum. J., Exh. L.1–L.50 [Doc. No. 287–3, p. 52].) Fair insists that the small sculpture pictured in Exhibit A to Roden's Declaration is a maquette of "Looking for Trouble," a monumental sculpture pictured in Exhibit A–9 to LeBlanc's Motion for Summary Judgement [Doc. No. 73–11]. Fair does not claim that "Looking for Trouble"

infringed his copyright on "Royal Entrance." Fair does not dispute any other part of the Roden Declaration. Both Roden and LeBlanc claim the maquette purchased by Roden is named "I'm the Boss" and was the predecessor to the larger sculpture with the same name.

For purposes of considering these motions for summary judgment, the name given to the small sculpture bought by Roden is not material, even though disputed, and the court will hereafter refer to the sculpture purchased by Roden in early 1994 simply as the Roden sculpture. Assuming for purposes of summary judgment that the Roden sculpture was not the maquette for the accused monumental sculpture "I'm the Boss" displayed at several Sportsman's Warehouse locations, it is undisputed is that the fully finished Roden sculpture was displayed at a Ducks Unlimited show in February, 1994 in Overland Park, Kansas near Kansas City, Missouri and that Roden purchased the maquette in early 1994. (Roden Decl.)

It is undisputed that Exhibit A–7 to LeBlanc's Summary Judgment Motion [Doc. No. 73–9] is a picture of the monumental version of "I'm the Boss," one of the two pieces that Fair claims infringed his copyright on "Royal Entrance." The Roden sculpture (as pictured in its home setting, Exhibit A to Roden Decl.) looks almost identical to Exhibit A–7, "I'm the Boss–Monumental" and is identical in appearance to Exhibit A–6 to LeBlanc's Motion for Summary Judgment which is labeled as "I'm the Boss (Marquette)(sic)." To even the most casual observer, the Roden sculpture does not look like the elk sculpture pictured in Doc. No. 73–11, which is undisputedly "Looking for Trouble" in its monumental form created in or around 1986.[2] However, because other small sculptures undisputedly of "I'm the Boss" were purchased during the years 1995 through 1997, whether the Roden sculpture is "I'm the Boss" is immaterial for purposes of summary judgment.

The undisputed record shows that Steve Houy saw LeBlanc's sculpture "Looking for Trouble" and wanted to purchase it, but could not do so because the editions were sold out. Instead, he bought a maquette of "I'm the Boss"—a sculpture he knew to be different from "Looking for Trouble"—in the fall of 1995. (Fair Rsp. S.W. Sum. J, [287–3], p. 76.) Houy subsequently bought several more sculptures from LeBlanc. (*Id.*) David S. Mowatt purchased a small bronze sculpture of "I'm the Boss" in 1995 and a life-size version of the same sculpture, "I'm the Boss" in 1998. (*Id.* at 78.) Rusty S. Elston saw a monumental version of "Looking for Trouble" at Pratt Park and liked it, but later saw "I'm the Boss" maquette and purchased it in 1996. The Elstons have a neighbor who has a monumental of "I'm the Boss" as well. (*Id.* at 77.)

It is undisputed that Cogswell Gallery began displaying "I'm the Boss" maquette version in 1995. (*Id.* at 74.) Cogswell Gallery was instrumental in putting to-

---

**2.** Fair himself describes "Looking for Trouble" as "straight head, straight neck, head high, combat/aggression moving forward toward another bull while bulging ..." and "a head high nearly straight necked aggressive bull looking for a fight ..." (Fair Rsp. to S.W. Sum. J., attachments, 278–3 at 54 and 58) This description is accurate with respect to the sculpture depicted in Doc. No. 73–11, undisputedly LeBlanc's "Looking for Trouble–Monumental" created in 1986. Fair's description does not at all fit the Roden elk sculpture (Doc. No. 73–14), nor does it fit Fair's "Royal Entrance" Doc. No. 271–3, or LeBlanc's "I'm the Boss" (Doc. No. 73–8 and 73–9) or "The Challenger" (Doc. No. 271–6, Exh. 7). On the last four sculptures, all the elks hold their heads and necks much lower in a position almost parallel with the ground as opposed to "Looking for Trouble" where the neck is perpendicular to the ground.

gether a deal for Mr. LeBlanc to create a monumental version of "I'm the Boss" in 1997 for Vail Associates who had seen the maquette version at Cogswell. (*Id.*) Love Patina Specialties made the original mold for the monumental "I'm the Boss" in 1998 and saw and photographed the original clay sculpture made by Stephen LeBlanc. (*Id.* at 75.)

Fair's copyright registration states that Fair did not first publically display his maquette of "Royal Entrance" until 2005, even though he created it in 1995. (Certificate of Registration, [Doc. No. 73–5] at ¶ 3, "Year of Creation: 1995; Certificate of Registration, ¶ 4, "If work has been published, Date and Nation of Publication: (a). **Date April ? 2005;** (b) Nation United States of America." " (emphasis added).) The clear inference is that Mr. Fair was attempting to copyright his "Royal Entrance" in 2006 solely because he had published his work to Sportsman's Warehouse in the portfolio in 2005. Mr. Fair has since vacillated about when "Royal Entrance" was first displayed or published. In his March 2, 2007 email to stephen cleblanc@earthlink.com, he states that his "sculpture 'Royal Entrance,' [is] a sculpture that first came under copyright protection in 1996 by publication, Copyright VA 1–382–611." Regardless of the dates Mr. Fair referenced in his 2006 application for copyright or his 2007[3] email, and excluding the question of whether the Roden sculpture was actually the maquette for "I'm the Boss," the remainder of the undisputed facts indicate that creation of a small sculpture which looked very much like "I'm the Boss," preceded or nearly

coincided with "Royal Entrance's" first publication, and that "I'm the Boss," with purchasers and gallery showings in 1995 was created by Stephen C. LeBlanc either before, or nearly simultaneously with Steven Fair's "Royal Entrance."

### D. Copyright Extends to Only Original Expression

Any copyrighted expression must be "original." *Feist Pubs., Inc.,* 499 U.S. at 345, 111 S.Ct. 1282. Although the amount of creative input by the author required to meet the originality standard is low, it is not negligible. *Id.* at 362, 111 S.Ct. 1282. There must be something more than a "merely trivial" variation, something recognizably the artist's own. *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 489 (9th Cir.2000). The originality requirement mandates that objective facts and ideas are not copyrightable. *Baker v. Selden,* 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879); *Feist,* 499 U.S. at 347, 111 S.Ct. 1282; *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1109–10 (9th Cir.1970). Similarly, expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law. *Bridge Publications, Inc.,* 183 F.R.D. at 259; *See See v. Durang,* 711 F.2d 141, 143 (9th Cir.1983). In a 1924 case from the District of New York, *Fred Fisher, Inc. v. Dillingham,* 298 F. 145, 151 (S.D.N.Y.1924), the court illustrates the point as, "... the court speaks of two men, each a perfectionist, independently making maps of the same territory. Though the maps are

---

**3.** As of late, Mr. Fair has begun referring to his **1994** sculpture. (*See i.e.,* Fair's Objection to Plaintiff Sportsman's Warehouse, Inc.s' Reply in Support of Summary Judgement under F.R.C.P. Rule 11 (hereinafter "Fair Obj. to Reply" [Doc. No. 319])). There is no indication other than Mr. Fair's opportunistic recreation of history that "Royal Entrance" was created earlier than 1995, his claimed date of creation or published prior to 1997, when a depiction of Fair's sculpture appears in 1997 Wild Wings catalogue together with a receipt apparently bearing the date 1997 as the date "painted." (Fair's Rsp. S.W. Sum. J., Exh. A–12, p. 22–25.)

identical each may obtain the exclusive right to make copies of his own particular map, and yet neither will infringe the other's copyright." *See also Mazer,* 347 U.S. at 217–218, 74 S.Ct. 460. Given the publication dates of "Royal Entrance" as set forth by Mr. Fair, he cannot meet the "originality test" under any set of circumstances when comparing his work to LeBlanc's "I'm the Boss."

### 1. Filtering Test to Determine Infringement of Protectable Elements

The Tenth Circuit has utilized an "abstraction-filtration-comparison" test for determining if an accused work is substantially similar to the protectable elements of a copyrighted work:

> At the abstraction step, we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then, we filter out the nonprotectable components of the product from the original expression. Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.

*Country Kids,* 77 F.3d at 1284–85.

Using this test, the court first must separate the ideas which are not protectable from the particular expression of the work. *Id.* at 1285. Then, the court must filter out the unprotected components of the product from the original expression. *Id.* Finally, the court compares the remaining protected elements to the allegedly copied work to determine whether the two works are substantially similar. *Id.*

Since copyrights do not protect thematic concepts, the fact that the same subject matter may be present in artistic renderings does not prove copying or infringement. Indeed, an artist is free to consult the same source for another original creation. As Justice Holmes stated: "Others are free to copy the original. They are not free to copy the copy." *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 249, 23 S.Ct. 298, 47 L.Ed. 460 (1903).

■ "[E]lements of a copyright defendant's work that were created prior to access to a plaintiff's work are to be filtered out at the first stage of substantial-similarity analysis, just as non-protectable elements are." *Id.* Therefore, when applying the filtering tests, independently-created elements such as those found in LeBlanc's earlier sculptures must also be filtered out. Ordinarily, similar elements between known work of the two sculptors would, depending on the degree of uniqueness and originality of the element, be evidentiary. However, where LeBlanc, the accused infringer, owns prior works containing the same elements, LeBlanc would have no reason, "beyond the illicit thrill of copyright infringement," to copy wrongfully from another what he could legally copy from himself. *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.,* 361 F.3d 312, 325–326 (6th Cir.2004). Therefore, where an element occurs both in a defendant's prior work and a plaintiff's copyrighted work, no inference of copying can be drawn. *Id.; see Sheldon v. Metro–Goldwyn Pictures Corp.,* 81 F.2d 49, 54 (2d Cir.1936) ("If the defendant has had access to other material which would have served him as well, his disclaimer [of copying] becomes more plausible.") In this case, then, almost all the individual elements over which Mr. Fair claims copyright protection would be removed as having occurred in Mr. LeBlanc's prior creations of "Looking for Trouble," "I'm the Boss" and the Roden sculpture, leaving no protectable elements upon which any jury could find substantial similarity.

## 2. Protectable Original Elements

Further, a court may find non-infringement as a matter of law where the similarity between the works concerns only non-copyrightable elements of the plaintiff's work. *Warner Bros. Inc. v. American Broadcasting Companies*, 720 F.2d 231, 240 (2d Cir.1983). "One of the fundamentals of copyright law is that a copyright does not protect an idea, but only the expression of the idea." *Autoskill, Inc. v. National Educ. Support Sys.*, 994 F.2d 1476, 1491 (10th Cir.1993). The Copyright Act provides "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (1996).

Courts routinely hold that, while realistic depictions of live animals may be protected by copyright, the protection afforded is "thin" and extends only to those original expressions that are not dictated by nature. *Satava v. Lowry*, 323 F.3d 805, 810–13 (9th Cir.2003). As the *Satava* court noted:

> Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters. These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them. An artist may, however, protect the original expression he or she contributes to these ideas. An artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of the animal. An

artist may vary the background, lighting, or perspective. Such variations, if original, may earn copyright protection. *Id.* at 812–13. *See also George S. Chen Corp. v. Cadona Int'l, Inc.*, 266 Fed.Appx. 523 (9th Cir.2008) (finding unprotectable those elements of a work that are commonplace or dictated by the idea of the animal in nature); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir.1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from such dolls."); *Dyer v. Napier*, 2006 WL 2730747 (D.Ariz.2006) (involving depictions of a mother mountain lion with her cub). Moreover, such "thin" copyright protects the creator of the asserted work against "only virtually identical copying." *Satava*, 323 F.3d at 812; *Dyer*, 2006 WL 2730747, at *8. Steven Fair does not dispute that his copyright protection is, at best, "thin." (Fair Rsp. S.W. Sum. J. at 15, ¶¶ 48, 50.)

Even given the applicability of "thin" copyright protection for wildlife renditions, courts routinely find that depictions of animals are unprotectable because the expression of the animal in nature has merged with the idea of the animal. *See, e.g., Franklin Mint Corp. v. Nat'l Wildlife Art Exchange, Inc.*, 575 F.2d 62, 66 (3d Cir.1978) (upholding the district court's determination that similarity between paintings of cardinals "reflected the common theme or subject"); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir.1971) (finding merger of the idea and expression of a jeweled pin depicting a bee; similarity between the two pins was no greater "than is inevitable from the use of jewel-encrusted bee forms in both."); *Streeter v. Rolfe*, 491 F.Supp. 416 (D.C.La.1980) (plaintiff's copyright merely protects his expression of the idea of

turkey decoys). When the 'idea' and its 'expression' are thus inseparable, copying the 'expression' will not be barred, since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by law. *Baker,* 101 U.S. at 103.

Mr. Fair stated under oath that in "Royal Entrance" he had not created a work that depicts anything that does not appear in nature based on his knowledge, understanding, and experience. (Deposition of Steven G. Fair, February 29, 2008, [hereinafter "Fair Depo."] at 69.) However, Fair claims that LeBlanc's sculptures infringe the pose, attitude, and expression of "Royal Entrance." (Fair Depo. at 63.) Fair also claims that "Royal Entrance" depicts the idea of a mature bull elk in "flehmen," a term that describes a male elk's lip position to facilitate detection of the scent of a female elk. (Fair Depo. at 47–48.) LeBlanc's sculptures "I'm the Boss" and "The Challenger" also depict the idea of a bull elk in flehmen "scenting" a cow elk. (LeBlanc Mot. S.J. at 6.) The expression of "Royal Entrance" is dictated by the idea of a bull exhibiting the flehmen response. (Fair Depo. at 105.)

By Fair's admission, all of the purported expressions contained in "Royal Entrance" are scènes à faire[4] that flow from the uncopyrightable concept of an elk exhibiting the flehmen response. Fair states, "the nose, the lips, the tongue, the ivory, the nostril, the glands, the eyes, the pedicel, the antlers, the neck, the back, the shoulder, the elbow, the leg, the hoof, the ribs, the hide, the loin, the hind, the rump, the tail, the hock, the leg, the hoof, the testicles, the penis, [and] the hair are not individually copyrightable under *scenes a*

*fair."* (Fair Rsp. S.W. Sum. J., Affidavit 287–2, p. 13.) (italics in orig.) Later Mr. Fair states, "Fair claims no copyright on 7/8 year old antlers, elk noses, elk flehmen, elk ears, elk nostrils, elk muscles, elk hooves, elk legs, elk eyes, elk ivory, elk lips, elk hide, elk tails, elk hair, bull elk, cow elk, calf elk, or any other thing created by Nature." (*Id.* at 29.)

Mr. Fair describes the display of the flehmen response in "Royal Entrance" as depicted by the elk "... moving warily downhill. His dorsal line, the back, the axis, the spine is slightly curved, his neck is curved. His head is rolled back so that his olfactory glands, his raised lip is up, as he would be scenting the estrus cow." (Fair Depo. at 51–2.) Mr. Fair testified that he was attempting to convey the concept of a bull elk exhibiting the flehmen response. (Fair Depo. at 47–8.) Mr. Fair acknowledges that "[f]lehmen is not copyrightable." (Fair Depo. at 111 and several of his many pleadings.)

The features that comprise Mr. Fair's expression in "Royal Entrance" are all characteristic of the idea of an elk in flehmen in nature. (Fair Depo. at 49.) The sculptural elements described by Mr. Fair are not original to "Royal Entrance" because each and every one of them is dictated by the behavior of an elk exhibiting the flehmen response. (Fair Depo. at 52.) When challenged with aspects of his sculpture that appear in and are dictated by nature, Mr. Fair replied "scènes à faire." (Fair Depo. at 121.) Mr. Fair admits that in "Royal Entrance" he has not created a work that depicts anything that does not appear in nature based on his knowledge, understanding, and experience. (Fair Depo. at 69.)

---

**4.** The scènes à faire doctrine, like the doctrine of merger, stems from a situation where there is essentially one single way to express an idea. This encompasses details which necessarily stem from a particular "genre" or "scenes which 'must' be done." *Atari, Inc. v. North American Philips Consumer Elec. Corp.* 672 F.2d 607, 616 (7th Cir.1982).

It is true, of course, that a unique combination of unprotectable elements may qualify for copyright protection. *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir.1994); *United States v. Hamilton,* 583 F.2d 448, 451 (9th Cir.1978) ("[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement."). *See also Metcalf v. Bochco,* 294 F.3d 1069, 1074 (9th Cir.2002) ("The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.").

Fair does not dispute that elk in nature can be seen in thousands of different poses including, "feeding, bedded, walking, standing, running, galloping, trotting, drinking, scraping, wallowing, sleeping, nursing, bulging, flehmen, barking, chirping, clicking, fighting, resting, watering, antler rubbing, scratching, kicking, in snow, in winter, in summer, in spring, in fall, or aggressively displaying bull/bull 'bugle', in sexual display, antler displaying, playing, escaping, or etc. & etc. etc.". (Fair Rsp. S.W. Sum. J. at 14.) A combination of unprotectable elements as set forth by Fair, is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship. *Satava,* 323 F.3d at 811; *Metcalf,* 294 F.3d at 1074; *Apple Computer, Inc.,* 35 F.3d at 1446; *Feist,* 499 U.S. at 358, 111 S.Ct. 1282 ("[T]he principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection.").

Infringement may not be found unless Mr. LeBlanc "copied protectable elements" of the copyrighted material and "those protectable elements comprise a substantial part" of Mr. Fair's work. "Royal Entrance" is merely a compilation of scènes à faire, to which copyright protection cannot extend. *See Satava v. Lowry,* 323 F.3d at 810 (applying scènes à faire doctrine and holding that elements of expression "that naturally flow from the idea" of the animal sculpture, as well as aspects resulting from the animal's physiology, are not protectable.)

The huge variety of elements set forth in detail in LeBlanc's Motion for Summary Judgment, at 5–16, and in Fair's Response to Sportsman's Warehouse Motion for Summary Judgment are elements so commonplace in any life-like sculpture of an elk and so typical of elk physiology that to recognize copyright protection in their combination effectively would give Mr. Fair a monopoly on any elk sculpture, especially during the mating season which occurs every fall. *Satava* at 811 (elements of lifelike glass-in-glass sculptures of single jellyfish with vertical tentacles could not be copyrighted); *Feist,* 499 U.S. at 363, 111 S.Ct. 1282 (noting that the selection, coordination, and arrangement of phone numbers in a directory "is not only unoriginal, it is practically inevitable"). The quantum of originality Fair added in combining these standard and stereotyped elements, if any, can only be considered "trivial."

Mr. Fair seems to confuse objective attributes of a wildlife sculpture which could be subject to copyright protection, with the fact that he did not use any reference materials to create the elk depicted in "Royal Entrance." Because the entire sculpture sprang from his own mind, Mr. Fair claims the material had to be his "original" idea. This is simply not the test. "Royal Entrance" is a depiction of an elk, a creature of nature, which Mr. Fair was visualizing based upon his study of and familiarity with elk he had seen

previous to the creation of "Royal Entrance." Mr. Fair did not "create" elk simply because he saw one in his head and reproduced it in a sculpture; he had seen elk previously or would not have had the vision to associate with the word "elk" in the first place. Whether he used pictures or a live elk 'model' to help him create a life-like bronze version of an elk is completely irrelevant to whether there are protectable elements in Mr. Fair's version of an elk which are unique from the elk itself in nature. In this case, both Mr. Fair and Mr. LeBlanc were attempting to create a realistic and lifelike representation of an elk. (Fair Depo. at 102–103; LeBlanc Decl. ¶ 13.) Fair cannot prevent other artists from combining elk physical attributes, whether or not he conjured them from an image in his head or whether he saw them in pictures or real life. Congress did not intend for artists to fence off private preserves from within the public domain, and, if Mr. Fair's copyright was recognized, it would permit him to do exactly that.

Mr. Fair also asserts that because *he personally* has never seen a live elk in exactly the same pose that he created for "Royal Entrance," the work is his original "artistic expression" and therefore copyright protectable. (Fair Rsp. S.W. Sum. J. at 14, ¶ 48; Fair Rsp. S.W. Sum J. Affidavit 287–2 ¶ 14 ["pose/attitude [of Royal Entrance] that has never been observed by the Author in Nature"].) Fair repeatedly makes the argument, "Fair has never seen the pose, attitude, gesture, coat, or texture in Nature as artistically expressed in the whole of Fair's 1994 'Royal Entrance'." (Fair Rsp. S.W. Sum. J., Affidavit Doc. 287–2 at p. 10, ¶ 9.) This is simply another spin on the argument that Fair created his sculpture "out of his head" and without reference to pictures or even to living elk in the wild. Whether Fair has ever seen an elk in the pose of "Royal Entrance" is not the point. Clearly, an elk had been

posed and even sculpted in a similar pose as it is depicted in the elk sculpture purchased by Roden from LeBlanc in early 1994. As is clear from the pose of the elk in the Roden sculpture, the pose was naturally possible and had been recreated *before* Fair created "Royal Entrance" in his mind. The fact that Fair believes he created something totally original and unique is not the point of copyright protection. The protectable item has to actually be original and unique and not seen in nature.

Therefore, the court finds that there are no quantifiable protectable elements in Mr. Fair's sculpture of "Royal Entrance" which could be the beneficiary of a copyright individually or collectively. Together the elements which are non-protectable do not arise to any pose or expression which is not found in nature and therefore collectively are non-copyrightable. Finally, as discussed below, to the extent any copyright protection could be found on the ethereal "feeling" of the sculpture, there is no evidence of copying which would support a claim of infringement.

### 3. Direct Copying

In a transparent effort to hang his hat on *Apple Computer v. Franklin Computer Corp.*, 714 F.2d 1240, 1245 (3d Cir.1983) and other cases involving original "errors" which were copied in later works (generally cases involving software programming or directory listings), Fair repeatedly states that in his work "Royal Entrance," he introduced the idea of flehmen as a "mistake." (Fair Rsp. to S.W. Sum. J. at 6.) The court is unsure exactly what is meant by this, except perhaps that Mr. Fair did not intend to depict his elk sculpture in flehmen, but rather as a bugling male, a related but slightly different looking elk behavior. Fair alleges, "LeBlanc presents facts that he does not know the difference between bugle and flehmen, and

LeBlanc mistakenly copied Fair's mistake. Whether or not Fair's flehmen was a mistake, the flehmen mistake tripped up Stephen C. LeBlanc ...". (Fair Obj. to Reply at ¶ 6.) Fair states, "Flehmen is a single aspect of Fair's 'Royal Entrance' *scenes a faire,* and the sculpture could be artistically expressed as bulging with only modification of the nose/mouth." (Fair Rsp. S.W. Sum. J., Affidavit, Doc. No. 287–2, ¶ 31) (italics in original.) He insists that Mr. LeBlanc then incorporated the same "mistake" when he later described his elk sculptures as "bugling." (*Id.*)

Whether Mr. LeBlanc or Mr. Fair actually knew the difference between elk in flehmen response and elk bugling is irrelevant. Both behaviors are engaged in by elk in nature. Whether an artist, be it sculptor, photographer, or painter, knows the underlying physiological basis for what he or she is faithfully reproducing from animal behaviors, if what they reproduce is an accurate representation of poses, attributes or other effects engaged in by the animal in the wild, it is not a protectable element and is fairly characterized as scènes à faire. In fact, Mr. Fair does not proclaim to impose his copyright on the act on an elk in flehmen, whether or not his inclusion of it in "Royal Entrance" was a mistake.

There is no evidence of direct copying of "Royal Entrance" by LeBlanc. (LeBlanc Declar. ¶ 9) LeBlanc's "I'm the Boss" was not produced from the same mold as "Royal Entrance." (Fair Depo at 126.) In fact, Fair admits that "Royal Entrance", "I'm the Boss" and "The Challenger" differ in several identifiable ways. (Fair Rsp. S.W. Sum. J. at 7.) Fair admits that LeBlanc's sculptures are "opposite" of Fair's-something Fair refers to as a "Mirror Image." (Fair Rsp. S.W. Sum. J. at 32.) Fair also admits the antlers on the elk are different, there is different veining in the face and the foot and legs are different. (*Id.*) All

those differences, Fair dismisses as scènes à faire. Those differences, along with the other undisputed evidence, indicate that there was no direct copying of "Royal Entrance" by Mr. LeBlanc.

### 4. Indirect Proof of Copying

Absent direct proof of actual copying, Fair must prove copying indirectly by establishing that LeBlanc had access to the copyrighted work and that probative similarities of protectable elements exist between the copyrighted material and the allegedly copied material. *Id.* The "copying" proscribed by copyright law in this context, then, means more than tracing the original, line by line. To some extent it includes the appropriation of the artist's thought in creating his own form of expression. *Franklin Mint Corp.,* 575 F.2d at 64–65.

Mr. Fair fails to allege or establish that Mr. LeBlanc had access to Fair's work prior to the 1997 edition of the Wild Wings catalogue, a time period well after LeBlanc had created and sold several editions of the maquette of "I'm the Boss," as well as the similar looking Roden sculpture. LeBlanc undisputedly began work on "pointing up" the smaller "I'm the Boss" displayed at Cogswell Galleries since 1995 for the Vail Associates monumental version in 1997. Given the absence of direct evidence of copying, access by LeBlanc to Fair's "Royal Entrance" is an element which Fair must, but has not and apparently cannot, establish. *Country Kids,* 77 F.3d at 1284.

To determine substantial similarity, the Tenth Circuit has stated that the "ordinary observer" test is an appropriate method. *Country Kids,* at 1288. The court must consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated

plaintiff's *protectable* expression by taking material of substance and value." *Id.* (quoting *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir.1982)) (overruled on other grounds).

■ Although the issue of substantial similarity may be an issue of fact for resolution by a jury, a court may sometimes determine non-infringement as a matter of law where (1) the similarity between the two works concerns *only non-copyrightable elements* of the plaintiff's work, as I find in this case, or (2) no reasonable jury could find that the two works are substantially similar. *Warner Bros. Inc.*, 720 F.2d at 240.

■ Although the key to the ordinary observer test is substantial similarities, not differences, courts have acknowledged that "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to the plaintiff's." *Fisher v. United Feature Syndicate, Inc.*, 37 F.Supp.2d 1213, 1226 (D.Colo.1999). *See also Warner Bros.*, 720 F.2d at 241 (noting that numerous differences between works tend to undercut substantial similarity). Furthermore, "where the protected work and accused work express the same idea, similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Durham Indus., Inc.*, 630 F.2d at 913.

### E. Conclusion

Both Mr. Fair's version of an elk expressed by "Royal Entrance" and Mr. LeBlanc's versions of elk expressed by "I'm the Boss" and "The Challenger" are visually distinguishable from live elk only by size and because the sculptures are of bronze while the other is flesh and blood. Mr. Fair's arrangement of the attributes of an elk is not "original" for copyright purposes. Instead, his arrangement remains that of an elk, walking downhill on rocks, scenting for a female during mating season, an idea which has been in the public domain for years. There are simply no protectable elements to distinguish Fair's elk sculpture as outside the public domain. Despite the artistic appeal of "Royal Entrance", "I'm the Boss" and "The Challenger", whatever ineffable qualities they each possess stem from "trivial" variation from the vision of a live elk, not "substantial" variation as contemplated in *Durham*. *Todd v. Montana Silversmiths, Inc.*, 379 F.Supp.2d 1110, 1111–1112 (D.Colo.2005). Therefore, this Court recommends the District Court find that there has been no infringement of Steven G. Fair's sculpture, "Royal Entrance" by Stephen C. LeBlanc in his creations "I'm the Boss" and "The Challenger" and award summary judgment in favor of Stephen LeBlanc on his Second Cross Claim of Declaratory Judgment of Non–Infringement.

Since there has been no infringement by Stephen C. LeBlanc of Steven G. Fair's copyright, there can be no infringement by Sportsman's Warehouse, a purchaser of LeBlanc's sculptures "I'm the Boss" and "The Challenger" and therefore I recommend granting Summary Judgment of Non–Infringement to Sportsman's Warehouse.

### IV. Analysis of Motions to Dismiss for Failure to State a Claim

Mr. Fair's Motions to Dismiss concerning the non-infringement claims by Sportsman's Warehouse and Stephen C. LeBlanc are resolved by the above analysis. Remaining for decision is Mr. Fair's motion to dismiss Mr. LeBlanc's claim of defamation pursuant to Fed.R.Civ.P. 12(b)(6).

To state a cause of action for defamation under Colorado law, the plaintiff must allege "(1) a defamatory statement concern-

ing another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1183 (10th Cir.2007) (quoting *Williams v. Dist. Ct., Second Judicial Dist.*, 866 P.2d 908, 911 n. 4 (Colo.1993)). LeBlanc's Cross Claim for Defamation against Fair alleges that Sportsman's Warehouse is a purchaser for value of animal sculptures from Steven LeBlanc, including the sculpture "I'm the Boss." (Ans./Cross–Claim, p. 5 ¶¶ 9 and 10.) The Cross Claim states, "Fair has falsely asserted to Sportsman's that "I'm the Boss" is an unauthorized copy of Fair's sculpture title "Royal Entrance" which is allegedly copyrighted. (*Id.* at ¶ 12.) Further the Cross Claim states, "Fair threatened to file a complaint against Sportsman's and LeBlanc in March of 2007 and again on June 12, 2007." (*Id.* at 13.) LeBlanc has asserted that the statements are "false" and that the statements have or will cause LeBlanc damages. (*Id.* at ¶¶ 16 and 18.)

This court, as it must, considers all the factual allegations in LeBlanc's complaint as true for purposes of considering Mr. Fair's Motions to Dismiss and has construed all those allegations in the light most favorable to Mr. LeBlanc and has made all reasonable inferences in LeBlanc's favor. *See Alvarado*, 493 F.3d at 1210; *Timpanogos Tribe*, 286 F.3d at 1204. I find that LeBlanc's Cross Claim for Defamation against Mr. Fair includes enough facts to state a claim for relief that is plausible on its face and therefore I recommend Mr. Fair's Motion to Dismiss LeBlanc's First Cross Claim of Defamation be denied.

**IT IS HEREBY RECOMMENDED::**

1. "Defendant and Cross–Claimant Stephen C. LeBlanc's Motion for Summary Judgment" [Doc. No.73] be GRANTED;

2. "Plaintiff Sportsman's Warehouse, Inc.'s Motion for Summary Judgment" [Doc. No. 271] be GRANTED;

3. "Defendant and Cross-claimant Stephen C. LeBlanc's Motion for Order Setting Oral Argument on Motion for Summary Judgment" [Doc. No. 151] be DENIED as MOOT;

4. Steven G. Fair's "Expedited Motion to Dismiss under FRCP 12(b) for Failure to State a Claim Upon Which Relief May be Granted" [Doc. No. 158] and "First Amended Expedited Motion to Dismiss under FRCP 12(b) for Want of Jurisdiction and for Failure to State a Claim upon Which Relief May be Granted" [Doc. No. 231] be DENIED;

5. "Defendant and Cross–Defendant Steven George Fair's Motion to Dismiss Cross–Claimant LeBlanc's Complaint of Defamation for Failure to State a Claim Upon Which Relief May be Granted Pursuant to FRCP Rule 12(b)(6)" [Doc. No. 289] be DENIED.

6. "Defendant/Cross Defendant Fair's Motion for Declaratory Judgment of Infringement" [Doc. No. 224] be DENIED; and

7. "Defendant and Cross-claimant Stephen C. LeBlanc's Motion to Strike Defendant/Cross Defendant Fair's Motion For Declaratory Judgment of Infringement" [Doc. No. 227] be DENIED.

**THIS COURT FURTHER RECOMMENDS:**

1. Steven G. Fair's "Petition for Protective Order and Order to Compel Stuart Utgaard to Answer Fair's Interrogatories and Admissions" [Doc. No. 166, filed February 1, 2008] be DENIED as MOOT;

2. "Defendant/Crossdefendant Fair's Objection and Motion Under FRCP 37 to Compel Answers" [Doc. No. 189, filed February 11, 2008] be DENIED as MOOT;

3 "Fair's First Amended Expert Witness Disclosure and Motion for Subpoenas" [Doc. No. 167, filed February 1, 2008] be DENIED as to the request for subpoenas. The infringement issues have been resolved with respect to the sculptures identified and for which the subpoenas were requested; and

4 "Defendant and Cross–Claimant Stephen C. LeBlanc's Motion to Quash Subpoenas" [Doc. No. 201, filed February 14, 2008] be GRANTED.

June 27, 2008